■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v VERNON DANN, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Queens County (Ferraro, J.), rendered May 18, 1982, convicting him of criminally negligent homicide (two counts), leaving the scene of an accident without reporting, operating a motor vehicle without a license and unlawfully engaging in a speed contest, upon a jury verdict, and imposing sentence. ¶ Judgment reversed, on the law, indictment dismissed and case remitted to the Supreme Court, Queens County, for the purpose of entering an order in its discretion pursuant to CPL 160.50. Defendant's conviction of, among other crimes, criminally negligence homicide arose out of a drag race which occurred during the early morning hours of August 18, 1980. During the high-speed race, a Camaro owned by the defendant climbed onto a grassy area, plunged into a crowd of people, killed two spectators and seriously injured several others. The Camaro also hit several parked cars and was "ripped apart". ¶ All of the counts of the indictment were based on the theory that defendant was in fact the driver of the Camaro during the drag race. The defendant's first trial took place in late September and early October, 1981. At the close of the People's case, defense counsel moved for a trial order of dismissal (see CPL 290.10), i.e., dismissal of the indictment "on the ground that the proof is legally insufficient". The motion was denied, and the case was submitted to the jury. The jury deadlocked and a mistrial was declared. Defendant was thereafter tried a second time, and was convicted. ¶ On appeal from the judgment of conviction defendant argues, *inter alia*, that (1) his motion for a trial order of dismissal at the close of the People's case at the first trial should have been granted and (2) his second trial violated his constitutional right against double jeopardy. ¶ We agree with defendant's arguments. ¶ Preliminarily, it should be noted that the defendant is not foreclosed from raising this double jeopardy argument at this juncture. ¶ In *Rafferty v Owens* (82 AD2d 582), the petitioner sought a writ of prohibition to prevent a second trial of the indictment pending against him. Petitioner's first trial ended with a not guilty verdict on one count of the indictment and jury disagreement as to the remaining two counts. Petitioner argued that his motion for a trial order of dismissal should have been granted because the evidence presented at his trial was legally insufficient to sustain a criminal conviction. Petitioner argued that as a result of the

court's erroneous ruling on his motion for a trial order of dismissal, any retrial on the unresolved counts would violate his constitutional right against double jeopardy. The question before the court in *Rafferty v Owens (supra)* was whether petitioner could, through the vehicle of a writ of prohibition, obtain review of the record of his first trial and a determination of the legal sufficiency of the prosecution's evidence. In answering that question in the negative (see *United States v Richardson,* 702 F2d 1079; *United States v Ellis,* 646 F2d 132; *United States v Becton,* 632 F2d 1294, cert den 454 US 837), this court held that petitioner had "an adequate remedy at law since, in the event he is convicted after a second trial, he may raise on direct appeal the question of the sufficiency of the evidence presented at the first" (*Rafferty v Owens, supra,* p 586). ¶ Similarly, in *People v Tingue* (91 AD2d 166), defendant's first trial on a burglary charge ended in a hung jury. On his second trial defendant was convicted. On appeal from the judgment of conviction, defendant argued, *inter alia,* that there was insufficient evidence of his unlawful entry, and the Trial Judge should have granted his motion, during the first trial, for a trial order of dismissal. In *Tingue (supra,* p 167) the Fourth Department was confronted with the "novel question" of whether on the appeal, it could review the record of the first trial for sufficiency of the evidence. In answering the question in the affirmative the court stated (pp 167-168): ¶ "The considerations that precluded the defendant from appealing prior to conviction should not now preclude him from seeking, on double jeopardy grounds, a review of the sufficiency of the evidence presented at the first trial. Had the first jury convicted the defendant, on appeal we would have reversed for insufficiency of the evidence. In that event there is no question that the bar of double jeopardy would have precluded a second trial (*Burks v United States,* 437 US 1) and the conviction that followed. In *Rafferty v Owens (supra),* as here, the first trial ended when the jury failed to agree. The appellate court held that the defendant could not, prior to retrial, challenge the sufficiency of the evidence presented at his first trial, but that he could do so in the event he was convicted after a second trial, citing *United States v Wilkinson* (601 F2d 791). *Wilkinson (supra)* was such a case where the defendant, following his conviction after a second trial, was permitted to challenge the sufficiency of the evidence presented at his first trial. ¶ "The argument in favor of such a review is persuasive. Why should the defendant be worse off because the first jury failed to agree than he would be if that jury had convicted. 'The Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding.' (*Burks v United States,* 437 US 1, 11, *supra.*) Since we find that the prosecution failed to muster sufficient evidence in the first trial, we should not permit him to obtain a conviction on his second attempt." (See, also, *United States v Balano,* 618 F 2d 624, 632, n 13, cert den 449 US 840; *United States v Bodey,* 607 F2d 265, 267-268; *United States v Wilkinson,* 601 F2d 791, 794-795.) ¶ We now turn to the merits of the defendant's arguments in the instant case. ¶ There is no disputing the fact that evidence was adduced during the People's case at the first trial which indicated that (1) several months before the race defendant had the Camaro altered to enhance its racing potential; (2) defendant was one of the owners of the Camaro; (3) shortly before the race, defendant arrived at a nearby Burger King in the Camaro, accompanied by two other men, one of whom was named "Eddie Eyes"; (4) defendant engaged in an argument with one of several men who came to the Burger King with a Duster, "over who was going to drive" the Camaro (the testimony regarding this argument did not in any way establish that defendant planned or agreed to drive the Camaro); (5) defendant stated at the close of the argument that "he was going to give up a car and the break", which signified that the Duster "was

able to leave first and his car would leave next"; and (6) defendant and his two companions left the Burger King with the Camaro. ¶ In addition, a police lieutenant testified that defendant voluntarily came to the precinct on the evening of August 18, 1980, for an interview regarding the drag race that occurred earlier that day. The defendant, who had no visible physical injuries, told the lieutenant, *inter alia,* that (1) he was hired by an unidentified individual to transport the Camaro to and from the race; (2) he merely observed the race and did not participate in it; and (3) after the race he placed the Camaro on a trailer and removed it from the race location. ¶ Under the circumstances, this evidence was clearly equivocal on the crucial issue of whether defendant drove the Camaro during the drag race. In an attempt to supply direct proof on this issue, the People relied at the first trial, and in opposition to defendant's motion for a trial order of dismissal, on the testimony of two witnesses who were present during the drag race. ¶ One of these two witnesses gave the following answers to the last two questions asked of him on direct examination: "Q: Do you know of your own knowledge who the driver of [the 1968 Camaro] was? * * * ¶ "A: Yes, I do. ¶ "Q: Who? ¶ "A: It was the owner of the car, [defendant] Vernon Dann." ¶ However, after this witness' credibility was impeached by defense counsel on cross-examination (i.e., in a statement to the police at approximately 6:00 A.M. on August 18, 1980, the witness did not tell the police that defendant was the driver of the Camaro), the court conducted the following inquiry of the witness and received the following answers: ¶ "THE COURT * * * Did you see Mr. Dann? You made a positive statement to this Court and jury that you know that the driver of the Camaro was Vernon Dann * * * ¶ "THE COURT: Did you see — I'm asking you now, did you see Mr. Dann in that Camaro automobile as the race was about to start? ¶ "THE WITNESS: No. ¶ "THE COURT: Did you see him in the automobile as the race was over in whatever manner it was over? ¶ "THE WITNESS: No, I didn't." ¶ The prosecutor then asked the witness the following question and received the following answer: ¶ "Q. How did you know it was Mr. Dann? ¶ "A. By prior agreement." ¶ Further inquiry by the court of the witness led to the following testimony: ¶ "THE COURT: You're saying you're making the statement to this jury you know he was the driver only because you heard a conversation of a prior agreement that supposedly had been worked out. ¶ "THE WITNESS: Because [the men who came with the Duster] wouldn't have been stupid enough — ¶ "THE COURT: Is that what you're saying? ¶ "THE WITNESS: Yes. ¶ "[PROSECUTOR]: What was your reason? ¶ "THE WITNESS: [The men who came with the Duster] wouldn't have been stupid enough to drive the car against Eddie Eyes." ¶ Defense counsel's immediate objection to this answer was sustained by the court on the ground that it called "for a conclusion on the part of this witness of the operation of the mind of two other different people". ¶ In view of this witness' response to the court's inquiry, it comes as no surprise that the trial court, in ruling on defense counsel's motion for a trial order of dismissal, properly discounted this witness' testimony. Specifically, the court disagreed with the People's evaluation of this witness' testimony by stating: "Nevertheless, since he never did indicate the circumstances under which he supposedly knew that fact, the Court, which does not make it a practice of engaging very frequently in the questioning of any witnesses, but in the interest of justice did wish to have some clarification from that witness at the conclusion of his interrogation as to the circumstances under which he made the statement, that he knew that the driver of the Camaro was Vernon Dann and he did acknowledge that he did not see the defendant behind the wheel of the automobile either at the beginning of the race or at the conclusion of the alleged race and after the incident occurred."

¶ The remaining witness relied on by the People to supply direct proof that defendant was the driver of the Camaro was the person who had altered the defendant's Camaro several months prior to the accident. He testified for the People on direct examination that he didn't know who was in the Camaro on August 18, 1980. However, over objection, the People were allowed to impeach the credibility of this witness (through the guise of refreshing the witness' recollection) by revealing to the jury a prior contradictory signed written statement of the witness which he gave to the police on August 19, 1980, and in which he stated that defendant was in the Camaro during the drag race. ¶ It is the testimony of this witness that was relied on by the trial court in denying defense counsel's motion for a trial order of dismissal at the first trial. Specifically, the court stated: "All right * * * as the Court indicated with respect to the motion made at the end of the People's case to dismiss, this Court is aware of fact [sic] that a substantial number, if not the overwhelming number of the People's witnesses did not give testimony that would identify the defendant as being the operator of the automobile with the exception of the witness Eduardo Leite. Though his own testimony may have been somewhat contradictory in nature, the Court nevertheless does recall that he did acknowledge that he had told Officer Frederick at the time of the investigation by Officer Frederick shortly after the accident, that the car in the left lane with Dann in it [sic]. And he certainly did so indicate that the vehicle that was in the left lane which in turn had been identified by other witnesses to be the white Camaro." ¶ In our view the court erred in permitting the People to impeach their own witness through the use of a prior contradictory signed statement. ¶ CPL 60.35 (subd 1) permits a party in a criminal case to impeach his own witness through proof of a prior contradictory signed written statement only when the witness gives testimony at trial upon a material issue of the case which "tends to disprove the position" of that party. Under those circumstances, the evidence of the prior contradictory signed written statement may be received "only for the purpose of impeaching the credibility of the witness with respect to his testimony upon the subject, and does not constitute evidence in chief" (see CPL 60.35, subd 2). Moreover, CPL 60.35 (subd 3) provides that when the witness in a criminal proceeding has made a prior signed written statement contradictory to his material trial testimony, and his trial testimony does "not tend to disprove" the position of the party who called him, "such party may not use such prior statement for the purpose of refreshing the recollection of the witness in a manner that discloses its contents to the trier of the facts". ¶ The trial testimony of the People's witness, i.e., that he did not know who was in the Camaro during the drag race, did not, in our view, "tend to disprove" the People's case within the meaning of CPL 60.35 (subd 1). The witness' testimony did not, in the words of the Court of Appeals, "affirmatively damage" the case of the party (the People) calling him (*People v Fitzpatrick,* 40 NY2d 44, 51; see, also, *People v Kitchen,* 55 AD2d 575). ¶ Without any direct proof that defendant drove the Camaro, we are of the view that the remaining evidence was not legally sufficient to convict him of the crimes charged against him. ¶ Accordingly, since the defendant's motion for a trial order of dismissal in the first trial should have been granted, his conviction after his second trial must be reversed, and the indictment dismissed (*People v Tingue,* 91 AD2d 166, *supra; Rafferty v Owens,* 82 AD2d 582, *supra).* Mangano, J. P., Bracken, O'Connor and Niehoff, JJ., concur.