■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CARLOS NAVARETTE, Appellant.—Judgment of the Supreme Court, New York County (Thomas Galligan, J.), rendered on October 17, 1985, convicting defendant, following a jury trial, of manslaughter in the first degree and sentencing him to an indeterminate prison term of from 8⅓ to 25 years, is reversed on the law, and the indictment dismissed, with leave to resubmit the manslaughter charge to a new Grand Jury.

On February 4, 1979, at approximately 5:00 A.M., defendant brought his two young children, four-year-old Winston and two-year-old Marguerite, to the home of his brother, Washington Navarette. He was crying and, before departing, told his brother to take care of the children. Later that morning, Washington observed that Winston was crying. He asked what was wrong, and the boy replied that his mother was on the floor of their apartment, bleeding. Washington thereupon went to his brother's apartment, but when there was no response to his knock, he returned home. However, he contacted the police at about 4:15 P.M. that afternoon, and met Officers Ronald Conners and Richard Feeney outside defendant's premises.

The officers tapped on the front door, and, receiving no answer, they forced their way inside. In the kitchen of the apartment, they found Marie Navarette, defendant's wife, lying fully clothed on her back. She was dead, and there was blood on her nose, as well as on the floor, walls and sink. A pile of blood-stained male clothing was in the living room, and blood samples from these garments were subsequently determined to match the deceased's uncommon blood characteristics. An autopsy was performed the next day. In the opinion of the medical examiner, Marie Navarette had died of two stab wounds to the chest, one of which perforated the main pulmonary vein and aorta.

Defendant never came back for his children, and Washington did not hear from his brother until the summer of 1985. Indeed, the police did not locate defendant until the latter part of 1984, when it was learned that he had been incarcerated on an unrelated charge in California. Two New York City detectives then flew to Los Angeles to transport him back. During the flight to New York, defendant inquired as to the time he would get if he pleaded guilty.

It should also be noted that one of the witnesses at trial was Grace Santos, who testified that in mid-1984, defendant had been living in her home in Los Angeles. One night, after she and defendant had been drinking, he confided in her the reasons for his leaving New York. According to Santos, defendant explained that he had returned home to discover his wife in bed with another man. The other man departed, but an argument and/or struggle ensued between him and his wife, and when he left the apartment, Marie was lying on the floor, bleeding. Defendant also told Santos that he brought his children to his brother's home and then went to South America. Despite repeated efforts by the District Attorney to elicit from Santos that defendant had confessed to stabbing his wife with a kitchen knife, she would go no further than assert that: "They were arguing and fighting. And I guess he—he got the knife. I don't know. I don't remember what he actually told me."

It appears from the record that Santos' testimony before the Grand Jury regarding defendant's admissions was more incriminating than what she was willing to state at trial. Thus, while she evidently informed the Grand Jury that defendant had told her that he had stabbed his wife with a kitchen knife, at trial she could not specifically recall, or was uncertain, what defendant had related to her. Therefore, the prosecutor, clearly frustrated by Santos' lack of cooperation, asked

leading questions, made sarcastic comments, and generally badgered the witness, frequently in contravention of the court's directions. Notwithstanding Santos' persistent refusal to concede that defendant had acknowledged stabbing his wife, and the fact that the Grand Jury minutes were never introduced as evidence, the trial jury was still made aware that Santos had previously testified that a confession was made.

Defendant was convicted of manslaughter in the first degree. On appeal, defendant contends that prejudicial error was made by (1) the improper impeachment of Grace Santos, and (2) the court's denial of the defense's request for a charge of manslaughter in the second degree. There is merit to both contentions.

CPL 60.35 allows a party to impeach its own witness by proof of a prior contradictory statement which is in writing and signed by the witness or is an oral statement made under oath. However, the testimony in question must be material and tend to disprove the position of the presenting party. The contents of the prior inconsistent statement may not be disclosed; it may, moreover, only be received for impeachment purposes and does not constitute evidence-in-chief, and the jury must be so instructed. In that regard, the testimony of a witness who merely asserts that he cannot recall the relevant events does not "tend to disprove" the prosecution's case to such an extent that impeachment is permissible *(People v Fitzpatrick,* 40 NY2d 44). This is because the inability of a witness to remember material facts simply "fails to corroborate or bolster the prosecutor's case; it does not contradict or disprove any testimony or other *factual* evidence presented by the prosecution" *(People v Johnson,* 108 AD2d 1059, 1060 [emphasis in original]; *see also, People v Burke,* 96 AD2d 971, *affd* 62 NY2d 860).

In the instant situation, Santos did not directly contradict herself at trial on an issue that affirmatively damaged the People's case *(see, People v Fitzpatrick, supra; People v Quinlan,* 117 AD2d 841; *People v Dann,* 100 AD2d 909). She did not, for example, claim at one proceeding that defendant had made certain inculpatory admissions and then state at another proceeding that he had not. Rather, Santos repeatedly insisted at trial that she could not recall everything defendant had confided in her. While it is true that a previous inconsistent statement "may also be used for the purpose of refreshing recollection where the witness' trial testimony, though disappointing or unhelpful, falls short of 'disproving' the party's position, so long as its contents are not disclosed to the

trier of the facts" *(People v Reed,* 40 NY2d 204, 207; *see also, People v Gilbert,* 99 AD2d 657), the result of the District Attorney's examination of Santos was not to stir her memory, which it failed to do, but to acquaint the jury with the gist of her Grand Jury testimony, which was impermissible. In addition, the highly prejudicial impact of the prosecutor's line of questioning was compounded by the lack of curative instructions by the court. Reversal of the judgment herein is mandated on this ground alone.

Defendant also urges that the trial court improperly declined to submit manslaughter in the second degree as a lesser included offense. In *People v James* (127 AD2d 485, 488), this court recently declared that "[w]here the issue presented is whether a defendant charged with murder intended to kill the deceased, the principle is long and well established that the question is for the jury, except in most unusual and exceptional circumstances * * * 'Whenever intent becomes material, its quality or persistence—the deranging influence of fear or sudden impulse or feebleness of mind or will—is matter for the jury if such emotions * * * can conceivably have affected the thought or purpose of the actor' " *(see also, People v Butler,* 57 NY2d 664, *revg* 86 AD2d 811). Where, as in the matter before us, there was not direct testimony of an eyewitness; the precise sequence of events is unclear; and there was proof that an argument occurred between defendant and his wife which escalated into a struggle, after he had allegedly found her in bed with another man, the court, pursuant to CPL 300.50, was required to instruct the jury with respect to the lesser included offense of manslaughter in the second degree, recklessly causing the death of another person (Penal Law § 125.15 [1]; *see, People v Glover,* 57 NY2d 61). Concur—Sandler, J. P., Carro, Milonas, Rosenberger and Smith, JJ.