Judgment, Supreme Court, Bronx County (Judith Lieb, J.), rendered May 17, 2006, convicting defendant, after a jury trial, of murder in the second degree, attempted murder in the second degree, and two counts of endangering the welfare of a child, and sentencing him to an aggregate term of 50 years to life, unanimously affirmed.
*422 Defendant was convicted of the murder of his fiancée, Vanessa Reynosa, and the attempted murder of her mother, Miriam Rivas. He attacked both victims with a machete. According to the uncontradicted trial testimony of a medical examiner, defendant inflicted six sharp-force wounds to Reynosa’s head, neck and shoulders, and perforated her spine, and delivered a single blow to Rivas that penetrated her brain.
The evidence of defendant’s murderous attacks is overwhelming. Among other things, after fleeing to the Dominican Republic and then surrendering to Dominican authorities, defendant confessed orally to New York detectives in the presence of the Dominican counsel obtained by his father after waiving his Miranda rights. He also signed a written statement, which was essentially consistent with his testimony at trial.
On appeal, defendant argues that he was denied his due process right to a fair trial when the trial court refused his counsel’s request to submit to the jury the charge of second-degree manslaughter as a lesser included offense of second-degree murder. Defendant also argues that he was denied his constitutional right to effective assistance of counsel when his attorney failed to request a charge of extreme emotional disturbance as an affirmative defense, which defendant contends could have reduced his culpability for murder and attempted murder to culpability for manslaughter offenses (see Penal Law § 125.25 [1] [a]; § 125.20 [2]; People v White, 125 AD2d 932, 933 [1986], lv denied 69 NY2d 956 [1987]).
We summarize the trial testimony that is relevant to the issues on appeal. On behalf of the People, Rivas testified that Reynosa met defendant in the Dominican Republic as a teenager and bore him two daughters, Brenda and Caroline. After immigrating to the United States in April 2004, defendant moved into Rivas’s one-bedroom apartment in the Bronx, where Reynosa, age 21, Caroline, age seven, and Brenda, age two, were already living. To Rivas’s knowledge, her daughter had no other boyfriends.
On May 12, 2004, defendant and Reynosa obtained a marriage license. On May 13, Rivas testified, Reynosa left the apartment at 8 a.m. to shop for a wedding dress, and Caroline left for school. At 10 a.m., Rivas left to visit her sister, leaving defendant alone in the apartment with Brenda. At about noon, Rivas returned to the apartment, where she saw defendant, who appeared tense and nervous, pacing in the living room, and a machete, which she had never seen before, lying under her sofa. Rivas found Reynosa dead on the floor of the bedroom, her head covered with blood. Brenda was also in the bedroom, covered with blood and crying for her mother.
*423 Rivas testified that she lifted Brenda up and, hoping for an opportunity to call the police, pleaded with defendant to go pick up Caroline from school, but defendant remained in the apartment, talking to himself. When Caroline came home around 4:30 p.m., defendant gave her money and sent her to a store, then entered the bedroom. Rivas held Brenda in her arms and pleaded, “Kill me, don’t kill the girl.” At that point, Rivas testified, defendant struck her on the head with the machete, and she lost consciousness.
On his own behalf, defendant testified that on May 13 he left the apartment around 11:30 a.m., returned to it about 90 minutes later, passed through the living room where Brenda was watching television, and opened the bedroom door to find Reynosa naked in bed with a naked man on top of her. According to defendant, he then “lost control” and “lost his mind.” The man fled from the bedroom. Defendant took a machete that was under the bed, grabbed Reynosa, and hit her with it. Then Rivas suddenly entered the apartment[1] and jumped on defendant, he testified, and he used the machete on Rivas while “crazy,” “bad,” and “out of control.” Defendant testified that he had not intended to kill or seriously injure Reynosa or Rivas.
Defendant put Reynosa’s body in the bathtub and put Rivas on a bed in the bedroom, where she apparently remained until the police found her two days later, miraculously breathing but unable to speak. The next morning, after leaving the children with relatives, defendant took money from Rivas’s purse and fled to the Dominican Republic, where he hid for several days before surrendering to the authorities. While in the presence of his counsel in the Dominican Republic, defendant waived his Miranda rights and gave a statement that essentially conformed to his trial testimony. On June 2, 2004, defendant was extradited to New York and arrested.
At the charge conference, the court denied the request by defendant’s counsel that it submit the second-degree reckless manslaughter of Reynosa as a lesser included offense of second-degree murder, on the ground that defendant’s conduct was “either intentional or not but [it’s] certainly not reckless.” Thereafter, counsel and the court discussed a possible extreme emotional disturbance charge, but defense counsel declined to request it.
On summation, defendant’s counsel argued, as he had in his opening, that defendant had lacked the intent to harm Reynosa *424 and Rivas. The prosecution contended both that defendant had intended to kill and that he had fabricated the story that he discovered Reynosa in bed with another man. In particular, the prosecution questioned whether Reynosa, knowing that defendant had keys to the apartment and could return at any time, would have sex with another man while her daughter was in the next room, and how that man could have escaped from the apartment when defendant arrived.
Challenging the trial court’s refusal to submit a reckless manslaughter instruction, defendant argues that, based on his testimony that he lost his mind when he found Reynosa having sex, the jury could have reasonably concluded that he had swung the machete at her without intending to kill her, but while nonetheless aware of and consciously disregarding a substantial and unjustifiable risk that he would kill her.
The claim lacks merit.[2] A person is guilty of second-degree murder when, with intent to cause the death of another person, he or she causes the death of that person (Penal Law § 125.25 [1]), and a person is guilty of second-degree manslaughter when he or she “recklessly causes the death of another person” (Penal Law § 125.15 [1]). For purposes of the murder statute, a person acts “intentionally” when his or her conscious objective is to cause death (Penal Law § 15.05 [1]), and, for purposes of the manslaughter statute, a person acts “recklessly” when he or she “is aware of and consciously disregards a substantial and unjustifiable risk that [death] will occur” (Penal Law § 15.05 [3]).
A defendant is entitled to have the jury consider a lesser included offense of a charged count by showing first that the offense is a “lesser included offense” of the charged crime as defined in CPL 1.20 (37),[3] and second that a reasonable view of the evidence supports a finding that the defendant committed the lesser crime but not the greater (CPL 300.50 [1]; People v Glover, 57 NY2d 61, 63-64 [1982]).
No reasonable view of the evidence supports a finding that defendant committed second-degree manslaughter but did not commit second-degree murder (cf. People v Fernandez, 64 AD3d *425 307 [2009]). As noted in the medical examiner’s uncontradicted testimony, defendant slashed Reynosa multiple times about the head, neck, and shoulders with a machete. Thus, he could not have acted merely recklessly (see e.g. People v Vega, 68 AD3d 665 [2009], lv denied 14 NY3d 806 [2010]; People v Dickerson, 67 AD3d 700 [2009], lv denied 14 NY3d 799 [2010]; People v De Jesus, 244 AD2d 244 [1997], lv denied 91 NY2d 925 [1998]).
The cases that defendant relies on are inapposite. For example, in People v Navarette (131 AD2d 326 [1987], lv denied 70 NY2d 705 [1987]), where the defendant stabbed his wife to death after he had allegedly found her in bed with another man, this Court held that the trial court improperly declined to submit second-degree manslaughter as a lesser included offense of second-degree murder. But in Navarette, an argument between defendant and his wife escalated into a struggle resulting in her death.
Defendant’s second claim on appeal is that he was denied effective assistance of counsel when his attorney declined the suggestion of a jury instruction on extreme emotional disturbance as an affirmative defense and instead relied exclusively on the theory that defendant lacked the intent to murder. According to defendant, counsel did not forgo an extreme emotional disturbance defense for any strategic reason, but because he misunderstood the law and the facts. Defendant argues that counsel did not request the charge because he wrongfully believed that the evidence failed to establish all of the elements of the defense.
The test for effectiveness in a case is whether counsel provided meaningful representation under the circumstances of that case, viewed in their totality (see People v Henry, 95 NY2d 563, 565 [2000]). While a defendant need not show actual prejudice to make out an ineffective assistance of counsel claim, he or she must show that “the attorney’s conduct constituted ‘ “egregious and prejudicial” ’ error such that defendant did not receive a fair trial” (People v Benevento, 91 NY2d 708, 713 [1998], quoting People v Flores, 84 NY2d 184, 188 [1994]).
Courts will not readily second-guess trial strategy (see People v Pacheco, 135 AD2d 744, 745 [1987], lv denied 71 NY2d 900 [1988]). If the defense reflects a reasonable strategy in light of the circumstances of the case and the evidence presented, it will not be considered ineffective assistance even if it proves unsuccessful (People v Rote, 28 AD3d 868, 870 [2006]). It is the defendant’s burden on appeal to show that counsel’s alleged shortcomings lack a legitimate explanation (People v Johnson, 37 AD3d 363 [2007], after remand 46 AD3d 276 [2007], lv denied 10 NY3d 865 [2008]).
*426 A review of defense counsel’s conduct during the trial, from opening through summation, reveals his consistent strategy of arguing to the jury that defendant lacked criminal intent. After the People withdrew the count of depraved indifference murder and the court rejected defense counsel’s request for a charge of reckless manslaughter, defendant was left with the choice of either accepting the course that the court seemed to urge (arguing the affirmative defense of extreme emotional disturbance) or adhering to the strategic course that he had pursued since his opening: arguing to the jury that the defendant lacked the culpable state of mind to have intentionally killed his fiancée and gravely injure her mother, and that therefore he should be acquitted of murder and attempted murder, the most serious crimes.
Regardless of whether defense counsel was correct in stating that his client’s testimony undermined one of the elements of the affirmative defense, counsel’s decision to argue that defendant lacked criminal intent was hardly devoid of legal insight or strategic sense. First, defendant would have had the burden of proving the affirmative defense of extreme emotional disturbance. Second, it is only a partial defense that would still have exposed defendant to a sentence of up to 25 years on the “reduced” manslaughter count and up to 15 years on the “reduced” attempted manslaughter count, especially given the viciousness of the acts. Counsel would have argued extreme emotional disturbance on essentially the same facts as those on which he argued lack of culpable intent. Finally, submitting the defense to the jury would have allowed it to reach a compromise verdict, thereby reducing defendant’s chances of a complete acquittal (see People v Lopez, 36 AD3d 431, 432 [2007], lv denied 8 NY3d 947 [2007]). By arguing lack of intent, counsel adopted an “all-or-nothing” defense that was reasonable under the circumstances (see People v Clarke, 55 AD3d 370 [2008], lv denied 11 NY3d 923 [2009]; see also People v Syphrett, 57 AD3d 286, 286-287 [2008], lv denied 12 NY3d 788 [2009]; Lopez, 36 AD3d at 432). Thus, on this record, we see no error in counsel’s performance that warrants reversal (see People v Alford, 33 AD3d 1014 [2006]). Concur—Andrias, J.P., Saxe, Sweeny, Freedman and Román, JJ.

. Rivas’s testimony offered a conflicting chronology. She stated that defendant attacked her about five hours after she had returned to the apartment on May 13 and discovered her daughter’s body.

. Defendant’s argument based on constitutional grounds is unpreserved because defendant did not assert it to the trial court (see e.g. People v Kello, 96 NY2d 740, 743-744 [2001]), and we decline to review it in the interest of justice. As an alternative holding, we reject it on the merits.

. Under the statute, an offense is a “lesser included offense” of a greater offense only when “it is theoretically impossible to commit the greater crime without at the same time committing the lesser” (People v Glover, 57 NY2d 61, 64 [1982]).