OPINION OF THE COURT
Gerard M. Weisberg, J.
In this action for false imprisonment, the defendant State of New York[1] must respond in damages for holding claimant in Kingsboro Psychiatric Center (Kingsboro), a mental health facility owned and operated by it.
On March 13,1981, Manuel Gonzalez was employed as a “mold maker” in Long Island City, New York. After he finished work at 4:00 p.m. on that day, he took a subway to the Berk Trade School in Brooklyn, where he was studying refrigeration. He arrived at 5:15 and left at 10:30 p.m. Again he proceeded to the subway, intending to go home. He reached the Hoyt-Schermerhorn station of the “GG” line at approximately 11:00 p.m.
While standing on the platform waiting for the train, Mr. Gonzalez testified that he was struck under the left arm by a person he did not see. The blow caused him to fall upon the tracks, leaving him breathless. While he was *211 getting up, a police officer arrived, assisted him and then took him to a police station.
Mr. Gonzalez stated that between the time he left work and the time he arrived at school, he drank two beers.
Claimant cannot speak English. He asserted that he was not provided with an interpreter by the police. After one or two hours in custody he was handcuffed and taken by car to Kings County Hospital (Kings County), arriving at approximately 3:00 a.m. Three police officers accompanied him. Once there, he was questioned, through an interpreter, by the hospital staff. At approximately 6:30 a.m., he was transferred by ambulance to Kingsboro, where, at 8:50 a.m., he was admitted.
At his initial interview at Kingsboro, claimant was again provided with an interpreter.
An admission note was prepared by Dr. G. G. Guarin, a psychiatrist. According to it, claimant was admitted on a “9:39 status on 3/14/81 on referral from [Kings County] accompanied by an ambulance driver.” Hospitalization was necessary because of “[i]mpaired insight and judgment.” “[A]lcohol breath” was noted and a provisional diagnosis of “Alcohol Intoxication” was given.
Significantly, Dr. Guarin states in this document that Mr. Gonzalez was “not delusional” and that there was “[n]o evidence of suicidal or homicidal ideation.” Claimant was also deemed “[o]riented in all spheres.”
A handwritten note, also prepared by Dr. Guarin on March 14, further illuminates the circumstances of claimant’s admission. This states that Mr. Gonzalez was “found by police lying on the subway tracks. Patient stated he was pushed into the tracks and even showed some superficial reddened skin injury where he got pushed * * * He stated he took 6 beers with friends after school”.
Dr. Guarin continued. “On Interview [Mr. Gonzalez] appeared clean, shaven, in clean clothes, and quite appropriate in his behavior, except that he looks sleepy and went to sleep in the later part of the interview. There is no evidence of a thinking disorder; he did, not show any delusional ideas, denied auditory hallucinations altho [sic] he admitted them at KCH after his recent bout of alcohol *212 intoxication. There was no evidence of suicidal or homocidal [sic] ideation at this Interview [emphasis supplied].”
Finally, Dr. Guarin writes “Dr. Desir[2] was called for consultation regarding discharge but could not be contacted. The Administrator, Dr. Nadel advised to keep patient until Monday”.
Mr. Gonzalez remained in custody at Kingsboro until March 16,1981. At approximately 8:00 a.m. on that day he was taken to a conference with, among others, a social worker, a supervisor and a doctor. As a result of this meeting, at about 10:30 a.m. a decision to discharge claimant was made. Mr. Gonzalez was in fact released at 11:15 A.M.
Claimant’s confinement at Kingsboro was pursuant to the authority of section 9.39 of the Mental Hygiene Law. Under that statute, a person who is alleged to have a mental illness “for which immediate observation, care, and treatment in a hospital is appropriate and which is likely to result in serious harm to himself or others” (subd [a]) may be received and retained in a statutorily prescribed hospital for a period of 15 days. A mental illness is “likely to result in serious harm” when the afflicted individual demonstrates a “substantial risk of physical harm to himself as manifested by threats of or attempts at suicide or serious bodily harm or other conduct demonstrating that he is dangerous to himself”. (Mental Hygiene Law, § 9.39, subd [a], par [1].)
A person may be admitted under section 9.39 of the Mental Hygiene Law “only if a staff physician of the hospital upon examination of such person finds that such person qualifies under the requirements of this section.” (Mental Hygiene Law, § 9.39, subd [a]; emphasis supplied.)
In order to prevail in his action for false imprisonment claimant must show that (1) agents of the State intended to confine him, (2) he was conscious of the incarceration, (3) he did not consent to it, and (4) the confinement was not otherwise privileged. (Broughton v State of New York, 37 NY2d 451, 456, cert den sub nom. Schanbarger v Kellogg, 423 US 929.) Where the detention was extrajudicial the *213 burden of proving privilege is on the party charged with the tort. (Hollender v Trump Vil. Coop., 58 NY2d 420, 425.; Parvi v City of Kingston, 41 NY2d 553, 557; Broughton v State of New York, supra, p 458.)
Defendant relies on the testimony of New York City Transit Police Officer Mitchell Friar, who assisted Mr. Gonzalez at the scene of the incident. This account differed markedly from claimant’s version. Officer Friar stated that he first observed Mr. Gonzalez on the morning of March 14, 1981 at 4:08 a.m. after disembarking from an “A” train at the Hoyt-Schermerhorn station. Claimant was lying on the tracks of the “GG” line, reclining on his right side. His head was resting on one of the running rails. His two hands, palms pressed together, were pillowing his head in this position. When first observed by Officer Friar, claimant’s eyes were closed. There was also a smile on his face.
Officer Friar jumped onto the tracks and helped claimant, now revived, regain the platform. During this time, two other officers had arrived. Claimant tried to fend them off and was handcuffed and taken to a transit police station. At approximately 4:20 a.m., Officer Friar was directed by his supervisory sergeant to bring claimant to Kings County. While at the police station claimant started crying at least twice. They arrived at 4:50 a.m. and at 6:15 a.m. claimant was admitted to that hospital. Officer Friar then returned to duty.
Officer Friar’s account, assuming its truth, has little bearing on the issue of whether claimant’s confinement was privileged under section 9.39 of the Mental Hygiene Law. That section required a member of Kingsboro’s staff to find, upon examination, that ^claimant was so seriously mentally ill that he constituted a danger to himself. No such finding was made. Quite the contrary, Dr. Guarin concluded that the claimant was, in effect, within normal limits of mental competency. Moreover, he specifically stated that Mr. Gonzalez was not delusional, suicidal or homicidal and that there was no evidence of a thinking disorder. Yet, claimant was confined under a statute which requires a medical determination that he posed “substantial risk of physical harm to himself”. (Mental Hygiene *214 Law, § 9.39, subd [a], par [1].) This action was illogical and certainly not within the statutory mandate.
In essence, claimant was admitted because he was observed lying on the subway tracks.[3] Although we can conceive of situations where a patient’s actions were so extreme as to warrant confinement even if unobserved by an admitting physician, this case is not one of them. Claimant’s presence on the tracks could be explained by an assault, as he contended, or by drunkenness. In light of this, evidence of a serious mental illness gleaned from direct observation by Kingsboro’s admitting doctor was required. Such indications were entirely lacking.[4] Claimant’s confinement was thus not in accordance with the requirements of the statute and cannot be said to be privileged by it.[5]
Defendant argues that because Officer Friar’s actions were justified under section 9.41 of the Mental Hygiene Law, the State’s detention of claimant is immune from suit. That section, inter alia, gives a “member * * * of an authorized police department” power to take into custody a mentally ill person behaving in a manner which is likely to result in physical harm to himself.
The State’s detention of Mr. Gonzalez was done under the auspices of section 9.39 of the Mental Hygiene Law which we have already considered and which requires a doctor, not a police officer, to make the decision to admit a mentally ill person. Any action taken by Officer Friar pursuant to section 9.41 of the Mental Hygiene Law, which we note does not authorize emergency admission to a *215 hospital, is therefore irrelevant to the question of whether claimant’s confinement at Kingsboro was privileged. Moreover, Officer Friar is not a State employee and the correctness of his behavior cannot be said to bear upon the issue of defendant’s liability. For these reasons, defendant’s reliance on section 9.41 of the Mental Hygiene Law is misplaced.
We note that we are not dealing with a case of mistaken diagnosis which might relieve the State from liability. (See St. George v State of New, York, 283 App Div 245, affd 308 NY 681.) Rather, this case involved an involuntary admission that was contraindicated by the examining physician’s own observations and not an error of medical judgment. (See Plumadore v State of New York, 75 AD2d 691.)
We have concluded that Mr. Gonzalez’ confinement was not privileged. Claimant has proven the existence of the other three elements of the tort of false imprisonment. Indeed, their presence is not controverted by defendant. Mr. Gonzalez may therefore recover.
While at Kingsboro he was forced to follow the normal routine for and placed in the general population of mentally ill patients. The bizarre conduct of these unfortunates interfered with his sleep, kept him in a constant state of vigilance, and caused him great embarrassment. Additionally, since his release, Mr. Gonzalez has suffered from periods of anxiety, insomnia and recurring headaches.
No expert testimony is required to establish that these emotional disturbances were proximately caused by and naturally flowed from this experience. (Meiselman v Crown Hgts. Hosp., 285 NY 389; Shaw v Tague, 257 NY 193; Rivera v State of New York, 115 Misc 2d 523.)
Mr. Gonzalez also missed 5 or 6 days of work because of his confinement. These include the day of his release and the subsequent day and days he visited a doctor because of his recurring physical complaints.
Upon the foregoing, we award claimant $10,000 for all damages sustained as a result of his false imprisonment in Kingsboro Psychiatric Center from the time of admission *216 on March 14, 1981 through and including the time of release on March 16, 1981.

. Claims against the New York State Office of Mental Health and Kingsboro Psychiatric Center were dismissed by a prior order of this court. The caption was amended accordingly. (Gonzalez v State of New York, Ct of Claims, June 2, 1982 [Modugno, J.].)

. B. Desir, M.D., was the “Chief Medical Officer, Acute Admissions Unit,” according to claimant’s discharge summary.

. There is also an indication that discharge was not forthcoming immediately on March 14 because Dr. Desir could not be reached.

. The only observations made by medical personnel which hint at a mental illness appear in the Kings County records. There claimant admitted to auditory hallucinations and suicidal thoughts, although he denied ever attempting to actualize the latter. At Kingsboro any “suicidal intent” for his presence on the tracks as well as “auditory hallucinations” were denied and expressly not found by the examining physician.

. Although not propounded by defendant, we note that there exists at common law a right to detain a person who poses an imminent physical threat to himself. (See Sindle v New YorK-City Tr. Auth., 33 NY2d 293; Warner v State of New York, 297 NY 395.) The State has presented no evidence whereby this right may be invoked. Its own doctor determined that claimant was not suicidal. Moreover, his findings lack any showing of the “urgency and necessity for the immediate restraint.” (Warner v State of New York, supra, p 401.) Claimant’s detention cannot be deemed to have been for his own protection and thus was not shielded by common-law privilege. (See Parvi v City of Kingston, 41 NY2d 553, 558.)