[967 NE2d 676, 944 NYS2d 453]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v AARON
RICHARD FISHER, Appellant.

Argued February 15, 2012; decided April 3, 2012

## APPEARANCES OF COUNSEL

*Timothy P. Donaher, Public Defender*, Rochester (*Janet C. Somes* of counsel), for appellant.

*Michael C. Green, District Attorney*, Rochester (*Kelly C. Wolford* of counsel), for respondent.

## OPINION OF THE COURT

MEMORANDUM.

The order of the Appellate Division should be reversed and a new trial ordered.

Defendant was convicted of various sex offenses and sentenced to prison terms aggregating to 20 years upon the testimony of two of his nieces, that while they were left by their mother in his care he on numerous occasions molested them. The alleged abuse was not, in the aftermath of its report, medically confirmed during the physical examinations to which the children were subjected, and defendant raised before the jury the question of whether the children had been put up to their accusations by their mother; there was evidence that the children were afraid of their mother because she was physically abusive and that she had a financial motive to prompt their allegations against defendant. Indeed, there was proof that the mother took advantage of defendant's arrest and pretrial incarceration to steal from him by cashing over forged endorsements government checks in substantial amounts payable to defendant and mailed to him at the mother's address.

Crucial to confirming the young children's accounts was testimony elicited by the People from one Raymond Burse, a convicted murderer, who, while reincarcerated for and awaiting a hearing upon an alleged parole violation, claimed to have become privy to statements by defendant in which defendant described his sexual predation upon his nieces. Defendant urged that Burse obtained the information upon which his testimony was based not from him but from legal papers he had with him during his pretrial incarceration, to which Burse surreptitiously gained access. Defendant pointed out in this regard that, upon learning of the sex abuse charges against him, Burse communicated by letter directly with the trial prosecutor, whose name he would not likely have known except from defendant's

paperwork. Defendant also contended that Burse was receiving a benefit in exchange for his testimony against him, the prosecutor having promised to write a letter on Burse's behalf to the Parole Board.

While the evidence of the charged abuse was sufficient, it was, even when viewed in the light most favorable to the People, far from overwhelming; the trial's outcome turned entirely on the jury's resolution of fairly pronounced witness credibility issues. Those issues should have been resolved by the jury dispassionately on the basis of the properly admitted evidence. The prosecutor's summation, however, directed the jury's attention elsewhere—a circumstance that competent defense counsel should have sought to prevent.

We have instructed that

> "[i]t is fundamental that the jury must decide the issues on the evidence, and therefore fundamental that counsel, in summing up, must stay within the four corners of the evidence and avoid irrelevant comments which have no bearing on any legitimate issue in the case. Thus the District Attorney may not refer to matters not in evidence or call upon the jury to draw conclusions which are not fairly inferrable from the evidence. Above all he [or she] should not seek to lead the jury away from the issues by drawing irrelevant and inflammatory conclusions which have a decided tendency to prejudice the jury against the defendant" (*People v Ashwal*, 39 NY2d 105, 109-110 [1976] [citations and internal quotation marks omitted]).

Here, the prosecutor improperly encouraged inferences of guilt based on facts not in evidence. Without record basis for referring to prior consistent statements by the complainants, no such statements having been admitted in evidence—likely for the very good reason that there had been no claim of recent fabrication (*see People v McClean*, 69 NY2d 426, 428 [1987])—the prosecutor bolstered her young witnesses' credibility by describing in extended fashion the "long road" they had traveled in advance of their trial appearances in the course of which "they said the exact same thing over and over and over again" to the police, social workers, doctors and the grand jury. Continuing, the prosecutor, essentially testifying, improperly, advised the jury that it could view evidence of the complainants' contemporaneous misbehavior at school as proof that the crimes occurred.

Hazard of an improperly founded, erroneous conviction was further heightened by the prosecutor's less than frank minimization of the consideration Burse was to receive in exchange for his potentially pivotal testimony as to defendant's jailhouse admissions. While it was literally true that the prosecutor, as she asserted in her summation, was not the Parole Board and did not "control what happen[ed] to Ray [Burse]," the none too subtle suggestion that the prosecutor's letter to the Board on Burse's behalf was merely a courtesy and conferred no real benefit to be weighed in assessing Burse's credibility was materially misleading; the prosecutor was plainly in a position, if not to control, at least to influence the outcome of Burse's parole violation hearing.

Finally, in her peroration, the prosecutor exhorted, "[t]he voice of a child is evidence, the testimony of two children is evidence. The day that the voice of a child is not evidence is the day that those doors [the doors to the courtroom] should be locked forever." Obviously, it was not permissible for the prosecutor, an officer of the court, to admonish the jury that their acceptance of the testimony of the child witnesses was essential to the administration of justice.

Even when viewed in the "totality" of the representation provided defendant, defense counsel's failure to object to any, let alone all, of the prosecutor's egregiously improper departures during summation, particularly in the highly charged, potentially outcome determinative context in which they occurred, deprived defendant of the right to effective assistance of counsel (see People v Baldi, 54 NY2d 137, 146-147 [1981]). We see no strategic basis for counsel's failure to object to these highly prejudicial instances of prosecutorial abuse, in critical respects utterly attenuated from the evidence and the applicable principles of law.

SMITH, J. (dissenting). Defendant was convicted on compelling evidence, after a fair trial, of sexually abusing two young girls. The majority sets the conviction aside because it is displeased with the prosecutor's summation, and thinks defense counsel should have objected to it. In fact, the summation, while not impeccable, was not outrageous. Defense counsel's choice not to object may have been the right one. And if it was a mistake, it rises nowhere near to the level of ineffective assistance of counsel.

I simply cannot fathom why the majority is reversing in this

case. We have never, so far as I know, done such a thing before, and I hope it will be long before we do it again.

## I

The majority identifies four passages in the prosecutor's summation that it says were improper. None of them would justify reversing defendant's conviction, even if defense counsel had objected and the objections had been overruled.

I concede that the prosecutor should have omitted her emotional peroration: "The day that the voice of a child is not evidence is the day that those doors should be locked forever." Prosecutors are supposed to be more dispassionate than that, and if objection had been made the trial court might have reminded the prosecutor and the jury to focus on the evidence. But missteps like this are not uncommon—getting carried away is an occupational hazard for trial lawyers—and they very rarely result in either a mistrial or a reversal on appeal. I know of no case, and the majority cites none, in which rhetoric fairly comparable to what this prosecutor used proved fatal to a conviction. Jurors should be given some credit for common sense, and no one with common sense would be persuaded by this sort of talk to overlook any reasonable doubt about a defendant's guilt.

The majority's criticism of the prosecutor's defense of the children's credibility (majority mem at 966) is technically, but only technically, correct. While it was perfectly proper for the prosecutor to remind the jury that the witnesses had traveled a "long road"—as indeed they had, through many interrogations—she should not have said that "they said the exact same thing over and over and over again." There was no evidence to that effect, and could not have been, because prior consistent statements are inadmissible hearsay. But prior *inconsistent* statements are admissible as impeachment, and it would have been quite proper for the prosecutor to point out to the jury that, despite all the times that the children had been interviewed and testified, they were not impeached at trial with a single significant inconsistency. That the prosecutor did not make the "long road" argument in quite the right way would surely be no basis for reversing this conviction—even if the issue were preserved.

The majority's other two criticisms of the summation are, in my opinion, simply wrong. The majority faults the prosecutor for telling the jury "that it could view evidence of the complainants' contemporaneous misbehavior at school as proof that the

crimes occurred" (majority mem at 966). But the majority does not explain why a sudden change in children's behavior is irrelevant in a case involving alleged sexual abuse. Factfinders are generally allowed to consider a victim's post-event conduct to support a finding that a crime occurred (*People v Groff*, 71 NY2d 101, 111 [1987]; *People v Kidwell*, 88 AD3d 1060, 1062 [3d Dept 2011]). I cannot believe that the majority intends to change that rule.

And finally, though I am no more impressed than the majority by the testimony of Burse, the jailhouse informer, the prosecutor was entitled to call Burse as a witness and to argue that the jury should believe him. In doing so, she faced the obvious problem that Burse got, in exchange for his testimony, a favorable letter from the prosecutor to the Parole Board, and she was entitled to remind the jury that she did not "control" what the Parole Board did. Of course, her letter might well influence what the Parole Board did—she never claimed it could not. If the jurors were not bright enough to figure that out on their own, it was explained to them by defense counsel in his own summation: "Do you really believe that a District Attorney of Monroe County going in front of a parole board and saying this man cooperated with us . . . [Y]ou don't think they would take that strongly into his consideration, and he will get his minimum?"

## II

While the majority has mentioned two things in the prosecutor's summation that might have warranted objection (and I believe there were others, though of minor importance), defense counsel was not necessarily wrong in passing up the opportunity to object. Before the prosecutor spoke, defense counsel had given an even more passionate, and quite effective, closing argument. He had excoriated the victims' mother ("You think this woman is not capable of using her children for financial gain? Of course, she is. It's all she does") and gone after Burse with enormous relish ("Can you believe one word out of that lying murderer's mouth? . . . [F]lush [his testimony] down the toilet where it belongs"). The prosecutor objected three times during this summation; all her objections look reasonable to me, but only one was sustained.

I am not suggesting either that defense counsel argued improperly, or that if he did the prosecutor should be excused for doing the same thing. But a defense lawyer who has just

given a summation like this, and been allowed to do so without significant interruption, might justifiably fear that he will look bad to the jury, or draw rebuke from the judge, if he interrupts his adversary's argument. He might have thought it a more effective strategy to warn the jury in advance about the prosecutor's rhetoric—and that is exactly what he did:

> "She's going to get up here when I'm done and she's going to be theatrical, she will be dramatic, like she's been throughout the course of the trial. She's trying to get you excited, play on your sympathies of these poor little kids . . . You can't base your verdict on what she says. You base it on the facts and the evidence and that's what came to you from the witness stand."

It was not, I suggest, an unreasonable trial strategy for defense counsel to sit quietly and appear unconcerned when the prosecutor did what he had told the jury she would do (*see People v Taylor*, 1 NY3d 174, 177 [2003] [defense counsel "may have concluded that further objections would serve only to annoy the trial court or—more importantly—the jury"]).

## III

But even if defense counsel's silence was a mistake, it is not close to being the sort of mistake that constitutes ineffective assistance of counsel.

The rules governing ineffective assistance claims are well established. A defendant is constitutionally entitled not to a perfect lawyer, but to "meaningful representation" (*People v Baldi*, 54 NY2d 137, 147 [1981]; *see People v Benevento*, 91 NY2d 708, 712 [1998]). "Judicial scrutiny of counsel's performance must be highly deferential" (*Strickland v Washington*, 466 US 668, 689 [1984]). Even "significant mistakes by defense counsel" will not necessarily sustain an ineffective assistance claim (*People v Turner*, 5 NY3d 476, 480 [2005], citing *People v Hobot*, 84 NY2d 1021 [1995] and *People v Flores*, 84 NY2d 184 [1994]). I have already said enough, I think, to demonstrate that any error defense counsel committed here did not cross the threshold of ineffectiveness.

Nor did defendant suffer prejudice from any error—a factor we have held "significant" though not "indispensible" to a showing of ineffective assistance (*People v Stultz*, 2 NY3d 277, 284 [2004]). While a defendant need not show that he would probably have been acquitted but for counsel's error, he must

show at least a serious impairment of his right to a fair trial (*Benevento*, 91 NY2d at 713). Here, defendant's trial was fair, and the proof of his guilt was strong—a conclusion I reach giving not the slightest weight to Burse's testimony.

There were four other witnesses—the two victims, their older brother and their mother—all of whom would have to be lying if defendant is innocent. Even accepting the theory of the defense that the mother (defendant's sister) had a motive to frame him, it is highly unlikely that she could have induced her children to invent the detailed, powerfully convincing testimony that they gave. The girls (12 and 8 at the time of trial) described their sexual experience in childlike, anatomically precise terms. Their 13-year-old brother described the older girl's decision to confide first in him, and then in their mother, and added his own observation of defendant's behavior: he said he had seen defendant kissing the older girl "on the neck like girlfriends/boyfriends, teenagers." To believe that the mother stage-managed all this testimony, the jury would have had to think her an extraordinary handler of theatrical talent. And, as the prosecutor asked in summation, if the whole story was a fabrication, why take the risk of bringing the boy into the conspiracy?

If the testimony of the children and their mother was not enough, the jury also heard evidence of defendant's consciousness of guilt. He admitted that, when his sister warned him "to watch what I say and watch what I did around her children" he volunteered the statement "I'm not a child molester"—at a time when no one had said he was. And when he was later confronted, by a police investigator, with the accusation, he gave incredible, defensive explanations—suggesting, in substance, that the older girl had tried unsuccessfully to seduce him. It was not until the trial that he claimed that the children's mother persuaded them to make everything up.

In sum, it is just not plausible that this defendant was convicted because his lawyer failed to object to the prosecutor's summation. He was convicted because the evidence proved him guilty beyond a reasonable doubt.

I deeply regret the majority's decision to require this painful case to be tried all over again. I can only end as I began, with the hope that we will not soon see another result like this.

Chief Judge LIPPMAN and Judges CIPARICK, GRAFFEO, READ, PIGOTT and JONES concur in memorandum; Judge SMITH dissents in an opinion.

Order reversed, etc.