# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

1368

KA 11-00688

PRESENT: SMITH, J.P., PERADOTTO, LINDLEY, VALENTINO, AND WHALEN, JJ.

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

V                                              MEMORANDUM AND ORDER

DAVID HECK, DEFENDANT-APPELLANT.

THE LEGAL AID BUREAU OF BUFFALO, INC., BUFFALO (SUSAN C. MINISTERO OF COUNSEL), FOR DEFENDANT-APPELLANT.

FRANK A. SEDITA, III, DISTRICT ATTORNEY, BUFFALO (MICHAEL J. HILLERY OF COUNSEL), FOR RESPONDENT.

-------------------------------------------------------------------------------------

Appeal from a judgment of the Supreme Court, Erie County (M. William Boller, A.J.), rendered March 25, 2011. The judgment convicted defendant, upon a jury verdict, of murder in the second degree.

It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.

Memorandum: Defendant appeals from a judgment convicting him upon a jury verdict of murder in the second degree (Penal Law § 125.25 [1]) for having intentionally caused his mother's death at their home in the Town of Tonawanda, contending that reversal is required for a number of reasons. We first address defendant's challenges to the weight and sufficiency of the evidence of his guilt (*see generally People v Bleakley*, 69 NY2d 490, 495). "In assessing legal sufficiency, a court must determine whether there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the [factfinder] on the basis of the evidence at trial" when that evidence is viewed in the light most favorable to the People (*People v Cahill*, 2 NY3d 14, 57 [internal quotation marks omitted]; *see People v Contes*, 60 NY2d 620, 621). Here, the proof of defendant's guilt is not only legally sufficient to convict, it is also fairly characterized as overwhelming. The evidence at trial established that defendant failed to notify police of his mother's death for several days; falsely stated to his neighbors that she was alive despite his knowledge of her death; staged the crime scene to make it appear that his mother had accidentally fallen and hit her head and then proceeded to tailor his account of her death accordingly; admitted to a fellow jail inmate while awaiting trial that he had killed his mother with a hammer; and had both a motive and the opportunity to commit the crime. In addition, a hammer was missing from the otherwise well-stocked toolbox

in defendant's home, and forensic evidence conclusively established that the victim did not die from a fall, as defendant had originally claimed, but rather from 13 blows to her head.

We similarly reject defendant's contention that the verdict is against the weight of the evidence (*see generally People v Danielson*, 9 NY3d 342, 348-349).  Aside from the incriminating evidence set forth above, defendant's theory of the case at trial, which was not that his mother had died from a fall but rather that an unknown intruder had killed her while he was out shopping, was unsupported by any credible evidence.  Defendant was the only person who had lawful access to the house apart from his mother, and there was no evidence that the house had been broken into or that anything had been stolen from it.  Moreover, the fact that the victim was struck 13 times in the head is consistent with the People's theory that this was a crime of passion and not, as defense counsel suggested, the act of an intruder who unexpectedly encountered the occupant of a house in the course of a burglary.

We next consider defendant's challenges to the court's refusal to suppress his various statements to police.  We initially conclude that the police lawfully entered defendant's home pursuant to the emergency exception to the warrant requirement of the Fourth Amendment to the United States Constitution and art I, § 12 of the New York Constitution (*see People v Mitchell*, 39 NY2d 173, 177-178, *cert denied* 426 US 953; *see also Brigham City v Stuart*, 547 US 398, 406).  Here, officers were responding to a 911 call from someone in that house who was heard moaning and groaning but who did not otherwise speak to the operator.  Thus, defendant's statements to police at his home were not the fruit of an unlawful entry, and the court therefore properly refused to suppress them (*see People v Stergiou*, 279 AD2d 387, 387, *lv denied* 96 NY2d 835).  We note that defendant does not contend that he was subjected to custodial interrogation at the home.

Defendant further challenges the admissibility of statements he made to police in the absence of *Miranda* warnings while in a private room at Kenmore Mercy Hospital (KMH), where he had been taken for treatment of a prior self-inflicted wound following the discovery of his mother's body.  Although defendant argues that he was in custody at KMH and was thus entitled to *Miranda* warnings before being interrogated there (*see generally People v Yukl*, 25 NY2d 585, 589, *cert denied* 400 US 851), the record does not disclose whether, at the time he made the statements at issue, he was in the custody of KMH mental health authorities pursuant to Mental Hygiene Law § 9.39 (a) (1) or whether, conversely, he was in the custody of police pursuant to section 9.41 (*see Gonzalez v State of New York*, 121 Misc 2d 210, 214-215, *revd on other grounds* 110 AD2d 810, *appeal dismissed* 67 NY2d 647).  While the interplay of those provisions might circumscribe the applicability of the standard *Yukl* analysis that defendant urges us to undertake (*see People v Ripic*, 182 AD2d 226, 233, *appeal dismissed* 81 NY2d 776), we ultimately need not consider the issue further because, for the reasons that follow, we conclude that any error in admitting the KMH statements is harmless under these circumstances.

The error, if any, is harmless primarily because defendant repeated the purportedly inadmissible statements approximately 3½ hours later to another police officer after he was transferred to Erie County Medical Center (ECMC) and advised of his *Miranda* rights. Thus, even if the KMH statements should have been suppressed, the ECMC statements would still have been properly admitted at trial; given the passage of time, the involvement of different police personnel, and the change in location, there had been a "sufficiently 'definite, pronounced break' " in the questioning to dissipate any taint of a prior *Miranda* violation upon the later statements (*People v Paulman*, 5 NY3d 122, 130-132, quoting *People v Chapple*, 38 NY2d 112, 115). We also note that, in both his KMH and ECMC statements, defendant vehemently denied any involvement in the victim's death and made no direct admissions of guilt. There is therefore no reasonable possibility that defendant would have been acquitted had his non-incriminating statements at KMH been suppressed and, because the evidence of defendant's guilt is otherwise overwhelming, we conclude that any error in admitting those statements is harmless (*see generally People v Crimmins*, 36 NY2d 230, 237; *cf. People v Foster*, 72 AD3d 1652, 1655, *lv dismissed* 15 NY3d 750).

We reject defendant's further contention that the court improperly permitted the introduction of demonstrative evidence at trial in the form of a hammerhead model (*see People v Gorham*, 72 AD3d 1108, 1110, *lv denied* 15 NY3d 773; *Rojas v City of New York*, 208 AD2d 416, 417, *lv denied* 86 NY2d 705; *see generally People v Del Vermo*, 192 NY 470, 482-483). We likewise reject defendant's contention that the court improperly received the victim's autopsy photographs in evidence. The photographs were relevant to establish the cause of her death and to counter defendant's statement to the police at his home that she had died from an accidental fall (*see People v Pobliner*, 32 NY2d 356, 369-370, *rearg denied* 33 NY2d 657, *cert denied* 416 US 905; *People v Alvarez*, 38 AD3d 930, 931-932, *lv denied* 8 NY3d 981).

Defendant's contention that he was deprived of a fair trial by prosecutorial misconduct during summation is unpreserved for our review (*see People v Romero*, 7 NY3d 911, 912). In any event, although comments by the prosecutor denigrating the defense's theory of the case were indeed improper (*see People v Gordon*, 50 AD3d 821, 822), they were not so pervasive or egregious as to deprive defendant of a fair trial (*see People v Jacobson*, 60 AD3d 1326, 1328, *lv denied* 12 NY3d 916). Nor can it be said that defendant received ineffective assistance of counsel due to the lack of any objection to those improper comments. Rather, defense counsel provided defendant with meaningful representation throughout the proceedings (*see generally People v Baldi*, 54 NY2d 137, 147; *cf. People v Fisher*, 18 NY3d 964, 966-967).

We have considered defendant's remaining contentions and conclude that they lack merit.

Entered:  February 1, 2013                    Frances E. Cafarell
                                              Clerk of the Court