(June 7, 2016)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MATTHEW MELENDEZ, Appellant. [33 NYS3d 223]—

Judgment, Supreme Court, New York County (Rena K. Uviller, J., at suppression hearing; Ronald A. Zweibel, J., at jury trial and sentencing), rendered December 3, 2013, convicting defendant of attempted murder in the first degree (two counts), attempted aggravated assault upon a police officer or peace officer (two counts) and criminal possession of a weapon in the second degree, and sentencing him to an aggregate term of 20 years to life, unanimously reversed, on the law, and the matter remanded to Supreme Court for a new trial.

The hearing court correctly determined that defendant knowingly and voluntarily waived his *Miranda* rights before each of his statements (*see People v Williams*, 62 NY2d 285, 289 [1984]). The record does not support defendant's assertion that the police implied that the investigation pertained solely to the possible criminality of the police officers who shot defendant, rather than the criminality of defendant's attempt to shoot the officers. In any event, the *Miranda* warnings administered the first day by the detective, and the second day by the prosecutor, clearly informed defendant that his statements could be used against him. None of the interrogators made any remarks of the type condemned in *People v Dunbar* (24 NY3d 304 [2014], *cert denied* 575 US —, 135 S Ct 2052 [2015]), or that otherwise undermined the effect of the warnings. Furthermore, as the suppression court observed, the content of defendant's statements demonstrated his awareness that they could be used against him. In any event, given the generally exculpatory nature of the statements when viewed in light of the trial issues, any error in receiving the statements was harmless.

The testimony by an assistant district attorney on matters relating to grand jury procedures and lawful use of force by the police presents a more troublesome issue.

The last witness called by the People on their direct case was one of the ADAs involved in the investigation of this case. She testified, over repeated objection, about the circumstances under which police officers would be justified in using deadly force. This testimony was not merely a general outline of the defense of justification but was, in several instances, tailored to the facts of this case. For example, the ADA testified, among other things, that possession of a loaded firearm outside of one's home or place of business was a felony. She also testified that, in a situation where the police are pursuing a suspect

whom they believe had committed a felony, and that suspect uses deadly physical force against them, or is armed with a deadly weapon, the police can properly use deadly physical force.

Here, defendant did not contest that he was armed with a loaded and operable firearm. His defense, however, was that he did not fire directly at the police officers pursuing him but rather fired in the air in order to scare them off.

The ADA was further allowed to testify, again over repeated objection, about the composition and the function of a grand jury and how a witness either obtains or waives immunity before that body. As with her testimony regarding the justifiable use of physical force by police officers, this testimony was both of a general nature and specifically related to the facts of this case. For example, she testified that a grand jury consists of 16 to 23 jurors who hear testimony to "determine if there is enough evidence for us to continue on a case or if there is not." She then proceeded to explain the grand jury subpoena process and how a witness who is subpoenaed to testify obtains immunity from prosecution for his grand jury testimony. The ADA was also permitted to testify, over objection, that if the grand jurors "feel there are additional witnesses that they would like to hear from," the District Attorney can subpoena those witnesses. She concluded by observing that none of the police witnesses in this case required a subpoena to testify in the grand jury, and none obtained immunity in exchange for their testimony.

Defense counsel moved for a mistrial and in response, the People argued that this testimony was introduced in anticipation of a potential defense claim that the officers testified falsely against defendant before the grand jury in order to protect themselves from indictment for wrongfully shooting defendant. The prosecutor also argued that this testimony was necessary to show that the officer's had no reason to fabricate their testimony. The defense, however, never made either claim. The motion for a mistrial was denied.

This testimony was improper for several reasons.

Comments regarding grand jury composition and proceedings have repeatedly been held to be improper when made by a court, and the same rationale applies when made by a prosecutor (*see e.g. People v Fortt*, 35 NY2d 921, 922 [1974], *revg for reasons state by dissent* 42 AD2d 859 [2d Dept 1973]; *People v Barnes*, 93 AD2d 864, 865 [2d Dept 1983], *lv denied* 60 NY2d 589 [1983]; *People v Williams*, 57 AD2d 876 [2d Dept 1977]). Such references are "completely unnecessary and possibly misleading" (*People v Fortt*, 35 NY2d at 922).

Here, the ADA's testimony that the grand jury that indicted defendant had heard testimony, had not asked to subpoena additional witnesses, and had voted to "go forward" fall within this prohibition. It carried the clear implication that the grand jury found that the police officer witnesses had testified credibly and had heard all the evidence necessary to indicate defendant's guilt.

Moreover, this testimony "was totally irrelevant to any legitimate issue presented at the trial," and as such was improper (*People v Ashwal*, 39 NY2d 105, 110 [1976]). As noted, it was introduced in anticipation of a defense argument that the officers had testified falsely in the grand jury to justify their actions in shooting defendant. This argument was never raised by the defense. In fact, the question of testifying without immunity in the grand jury was raised by the prosecutor during his direct examination of a police officer and was only commented on by defense after it was raised by the prosecutor.

These errors were compounded by the ADA's testimony regarding the use of deadly physical force by the police. By permitting the witness to instruct the jury on the law of justification during the People's case, and apply the law to the facts of this case, "the court improperly surrendered its nondelegable judicial responsibility" (*People v Brown*, 104 AD3d 864, 865 [2d Dept 2013]; *see also People v Stiggins*, 1 NY3d 529, 530 [2003]; *People v Bayes*, 78 NY2d 546, 551 [1991]). "The court's delegation of this critical judicial function to the [prosecutor-witness] significantly impaired the integrity of the proceedings and deprived the defendant of a fair trial" (*People v Brown*, 104 AD3d at 865).

With respect to the prosecutor's summation, many of the challenged remarks generally constituted permissible advocacy. A prosecutor, like any other advocate, is entitled to broad leeway in summation (*People v Galloway*, 54 NY2d 396, 399 [1981]; *People v Nai Hing Liang*, 208 AD2d 401, 401 [1st Dept 1994]). However, there are certain well-defined limits to such advocacy. "Above all[,] he should not seek to lead the jury away from the issues by drawing irrelevant and inflammatory conclusions which have a decided tendency to prejudice the jury against the defendant" (*People v Ashwal*, 39 NY2d at 110). The prosecutor must "stay within the four corners of the evidence," "may not refer to matters not in evidence," should not "call upon the jury to draw conclusions which are not fairly inferrable from the evidence," or make arguments that "have no bearing on any legitimate issue in the case" (*id.* at 109-110 [internal quotation marks omitted]).

Here, on two separate occasions during his summation, the prosecutor did exactly that.

At one point, he rolled up a piece of paper and placed it in front of a gun. He used this prop, over repeated objection, to demonstrate a police officer's testimony regarding muzzle flashes. The police witness, however, did not make such a demonstration during his testimony, and his references to a muzzle flash were limited.

Subsequently, the prosecutor used a laser pointer to demonstrate how the shots fired by defendant would have gone wide of their mark. He also used this demonstration to argue that defendant's bullets would have shattered and thus explain the absence of ballistics evidence from defendant's gun. No expert ballistics testimony was presented during the trial.

These comments were based upon facts not in evidence, something defense counsel speficially noted in at least two objections that were overruled. Moreover, they tended to lead the jury away from the issues before them in this case. As a result, they were improper (*People v Fisher*, 18 NY3d 964, 966 [2012]; *People v Collins*, 12 AD3d 33, 39-40 [1st Dept 2004]). Additionally, by discussing muzzle flashes and the potential trajectory of the defendant's bullets, the prosecutor improperly testified, not only as a witness, but as an expert witness (*People v Fisher*, 18 NY3d at 966).

The cumulative effect of these multiple improprieties during the People's direct case and summation caused defendant substantial prejudice and denied him a fair trial (*People v Calabria*, 94 NY2d 519, 523 [2000]).

Accordingly, we reverse and remand for a new trial (*People v Riback*, 13 NY3d 416, 423 [2009]). Concur—Sweeny, J.P., Acosta, Manzanet-Daniels, Gische and Gesmer, JJ.