People v Powell (2018 NY Slip Op 06768)





People v Powell


2018 NY Slip Op 06768


Decided on October 10, 2018


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on October 10, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

SHERI S. ROMAN, J.P.
SANDRA L. SGROI
JOSEPH J. MALTESE
HECTOR D. LASALLE, JJ.


2014-09322
 (Ind. No. 8291/11)

[*1]The People of the State of New York, respondent,
v
Steven Powell, appellant.


Paul Skip Laisure, New York, NY (A. Alexander Donn of counsel), for appellant, and appellant pro se.
Eric Gonzalez, District Attorney, Brooklyn, NY (Leonard Joblove and Anthea H. Bruffee of counsel), for respondent.



DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Kings County (Neil Jon Firetog, J.), rendered October 2, 2014, convicting him of murder in the second degree and criminal possession of a weapon in the second degree, upon a jury verdict, and imposing sentence.
ORDERED that the judgment is reversed, on the law and as a matter of discretion in the interest of justice, and the matter is remitted to the Supreme Court, Kings County, for a new trial.
The defendant was convicted of murder in the second degree and criminal possession of a weapon in the second degree, upon a jury verdict, in connection with the shooting of an individual in Brooklyn on September 22, 2011. The People presented the testimony of a witness who testified that he was with the defendant and observed the defendant take out a gun and shoot the victim. The witness further testified that after the shooting, the witness picked up the gun and fled with the defendant to an apartment the witness shared with his girlfriend. Other testimony established that the victim was shot eight times, the murder weapon was found in the garbage compactor room of the building into which the witness and the defendant fled, and shortly after the shooting the defendant, the witness, and the witness's girlfriend were taken into custody from the apartment into which the witness and the defendant fled. Testimony by an expert who performed DNA testing on the murder weapon and DNA analysis reports established that (1) a swab taken from the trigger and trigger guard of the murder weapon contained a mixture of DNA from at least three people, and the witness was a major contributor to that sample; (2) a swab taken from the safety of the murder weapon contained a mixture of DNA from at least two people, and the DNA mixture found in that sample was approximately 1.11 billion times more probable if the sample originated from the defendant, the witness's girlfriend, and one unknown, unrelated person, than if it originated from the witness's girlfriend and two unknown, unrelated persons; and (3) the DNA mixture found in the sample taken from the safety was approximately 616 million times more probable if the sample originated from the defendant and two unknown, unrelated persons than if it originated from three unknown, unrelated persons.
Viewing the evidence in the light most favorable to the prosecution (see People v Contes, 60 NY2d 620), we find that it was legally sufficient to establish the defendant's guilt beyond [*2]a reasonable doubt. Moreover, in fulfilling our responsibility to conduct an independent review of the weight of the evidence (see CPL 470.15[5]; People v Danielson, 9 NY3d 342), we nevertheless accord great deference to the jury's opportunity to view the witnesses, hear the testimony, and observe demeanor (see People v Mateo, 2 NY3d 383, 410; People v Bleakley, 69 NY2d 490, 495). Upon reviewing the record here, we are satisfied that the verdict of guilt was not against the weight of the evidence (see People v Romero, 7 NY3d 633).
However, reversal of the judgment is required due to prosecutorial misconduct on summation and because the Supreme Court failed to provide the jury with an accomplice-in-fact instruction. Although these issues are unpreserved for appellate review (see CPL 470.05[2]), we reach them as a matter of discretion in the interest of justice (see CPL 470.15[6][a]). Moreover, reversal is required because the defendant was deprived of the effective assistance of counsel (see People v Baldi, 54 NY2d 137, 147).
During her summation, the prosecutor stated that the "defendant's DNA was on the safety of that gun," and that "the science finds him guilty." The prosecutor further stated that "[t]he DNA has spoken," and that "[t]he defendant's DNA, by being on that safety without even taking into account [the witness's] testimony, makes him guilty." This was an overstatement and misrepresentation of the statistical comparison testified to by the People's expert who performed the DNA analysis of the swab taken from the safety of the murder weapon. "While the prosecutor was entitled to fair comments on the DNA evidence available in this case, she was not entitled to present the results in a manner that was contrary to the evidence and the science" (People v Wright, 25 NY3d 769, 782). "In light of the powerful influence of DNA evidence on juries, the opportunity for juror confusion regarding the limited probative value of the DNA methodology employed in this case, and the qualified nature of the test results," the prosecutor engaged in misconduct when she misrepresented and overstated the probative value of the DNA evidence by telling the jury that the defendant's DNA was on the safety of the murder weapon (id. at 771). As a result, the defendant was deprived of his right to a fair trial (see People v Jones, 134 AD3d 1588, 1589; cf. People v Ramsaran, 29 NY3d 1070, 1071).
The prosecutor also engaged in misconduct during her summation when she stated that she met with the witness on several occasions, and during those times, "he did not know that his DNA was on the trigger or the trigger guard or anywhere on that weapon," and she "did not tell him that the DNA, his DNA was on that gun." The prosecutor's summation also included the following statements: "But [the witness] told me in talking about this case in detail, he told me what he did"; "He told me that he held that firearm"; "Exactly how he told you on this stand when the defendant dropped it, . . . he picked it up and quickly threw it into a black bag so his girlfriend wouldn't see"; and "He's telling me and he doesn't even know what I have. Honesty. Straightforward about what happened." These statements by the prosecutor improperly encouraged inferences of guilt based on facts not in evidence, improperly injected her own credibility into the trial, and improperly vouched for the credibility of a witness for the People (see People v Fisher, 18 NY3d 964, 966; People v Paperno, 54 NY2d 294, 300-301; People v Puglisi, 44 NY2d 748, 750; People v Ashwal, 39 NY2d 105, 109-110; People v Collins, 12 AD3d 33, 37).
We further find that the defendant was deprived of the effective assistance of counsel, inter alia, due to defense counsel's failure to object to the prosecutor's improper comments in summation (see People v Wright, 25 NY3d at 771; People v Fisher, 18 NY3d at 967; cf. People v Ramsaran, 29 NY3d at 1071) and defense counsel's failure to request an accomplice corroboration charge (see People v Douglas, 160 AD3d 436). Since different inferences could reasonably be drawn from the witness's testimony and from the forensic evidence as to the witness's role as an accomplice (see CPL 60.22), the lack of an accomplice corroboration charge also warrants a new trial (see People v Sage, 23 NY3d 16, 29; People v Douglas, 160 AD3d 436; People v Riley, 152 AD3d 719, 720).
The defendant's remaining contentions need not be reached in light of our determination.
ROMAN, J.P., SGROI, MALTESE and LASALLE, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court