■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ANTHONY C. CLARK, Appellant. [600 NYS2d 553] —Judgment unanimously reversed on the law and as a matter of discretion in the interest of justice and new trial granted. Memorandum: Defendant appeals from a judgment convicting him, after a jury trial, of criminal possession of a controlled substance in

the fourth degree. Defendant's principal argument on appeal is that he was denied a fair trial because of pervasive prosecutorial misconduct, because the court failed to take corrective action or give curative instructions, and because highly prejudicial evidence was improperly admitted. We agree.

On October 2, 1990, defendant and his cousin, Jarrett Cottrell, were observed switching price tags on two pairs of boots by a department store security officer. After Cottrell paid for the boots, the security officer apprehended the two men and held them until the police arrived. Defendant was patted down but no weapons or contraband were found. The men were taken to police headquarters where defendant was subjected to another search, requiring him to strip to his underwear. During that search, a different police officer felt something "very unusual" in defendant's crotch area and removed what "looked like a * * * rubber". The contents of the plastic bag ultimately were determined to be cocaine. Prior to trial, the People provided defense counsel with a copy of a statement signed by Cottrell wherein he admitted that he saw defendant switch the price tags, that he observed the search of defendant that allegedly uncovered the cocaine, and that, while he was in jail, he received two letters from defendant "in regards to my testimony in this case".

At trial Cottrell was called as a witness for the People and testified that he did not see defendant switch the price tags, that he was not present when defendant was searched at police headquarters, and that he did not know who wrote the letters he received while in jail. The prosecutor confronted Cottrell with his prior written statement. Defense counsel objected on the ground that, pursuant to CPL 60.35 (3), Cottrell could not be impeached by his prior inconsistent statement. The court overruled the objection and allowed the statement to be read into evidence, except for the reference to the two letters Cottrell allegedly received from defendant. Nevertheless, the prosecutor was allowed to question Cottrell extensively regarding the substance of the letters. Defense counsel's objection to that line of questioning was overruled.

The court erred in allowing the prosecutor to impeach Cottrell by means of his prior inconsistent statement. CPL 60.35 (3) provides that, when a witness has made a prior signed statement contradictory to his testimony "upon a material issue of the case, but his testimony does not tend to disprove the position of the party who called him and elicited such testimony, evidence that the witness made such prior

statement is not admissible". Cottrell's testimony, although contradictory of his written statement, did not " ' "affirmatively damage" ' " the People's position *(People v Comer,* 146 AD2d 794, 795, *lv denied* 73 NY2d 976; *People v Dann,* 100 AD2d 909, 912). Moreover, the reference in Cottrell's written statement to the two letters was not relevant to a material issue of the case. The letters were relevant to defendant's attempt to influence Cottrell's testimony, but that issue was collateral to defendant's guilt or innocence *(see, People v Carter,* 106 AD2d 654). The admission of Cottrell's prior statement and the persistent questioning by the prosecutor regarding the contents of the two letters, over defense counsel's objection, were highly prejudicial and the curative instruction given by the court was not sufficient to overcome the prejudice.

Additionally, several of the prosecutor's remarks in summation were patently improper. On several occasions the prosecutor denigrated defendant's case, asserting that defense counsel was "blowing smoke". Although there was no objection to those characterizations, the prosecutor exceeded the bounds of proper rhetorical comment *(see, People v Jackson,* 143 AD2d 363; *People v Torres,* 111 AD2d 885; *cf., People v Galloway,* 54 NY2d 396). The prosecutor's suggestion that defendant was a drug dealer was highly prejudicial, referring to matters not in evidence and asking the jury to draw a conclusion that was not fairly inferable from the evidence *(see, People v Wright,* 41 NY2d 172, 175). The prosecutor's comparison of Cottrell, her own witness, to Pinocchio also was improper *(see, People v Ubiles,* 148 AD2d 1002, 1003, *lv denied* 74 NY2d 748; *People v Davis,* 112 AD2d 722, *lv denied* 66 NY2d 918; *People v Nunez,* 74 AD2d 805). The most egregious impropriety in the prosecutor's summation was her statement that, "[i]f the People felt that [Cottrell's written] statement was false, we wouldn't have given him immunity". By vouching for Cottrell's written statement, the prosecutor injected the integrity of the District Attorney's office into the case *(see, People v Carter,* 40 NY2d 933, 934). The prosecutor compounded her misconduct by advising the jury that Cottrell's prosecution for petit larceny was barred by double jeopardy. There was no evidence in the record to support that contention.

Having concluded that much of the prosecutor's summation was improper, we must now address whether the misconduct deprived defendant of a fair trial *(see, e.g., People v Hopkins,* 58 NY2d 1079; *People v Roopchand,* 107 AD2d 35, *affd* 65 NY2d 837; *People v Lowen,* 100 AD2d 518). We conclude that

it did. First, the trial court did not act as a "saving grace" by handling the episodes of misconduct "promptly and forcefully" *(People v Galloway,* 54 NY2d 396, 399, *supra; see also, People v Wood,* 66 NY2d 374, 380; *People v Mott,* 94 AD2d 415, 419). Second, this is not a case where only a small portion of the misconduct is preserved for our review *(see, People v Wood, supra,* at 380). Finally, the evidence of guilt was not overwhelming *(see, People v Bailey,* 58 NY2d 272). Defendant attempted to challenge the credibility of the police with respect to the two searches, based upon the theory that the criminal possession charge was concocted by the police. That theory was predicated on the undisputed testimony of a police officer that defendant was thoroughly searched at the department store and no drugs were found. Where a case hinges on the credibility of witnesses, and the People vouch for a statement of a hostile witness to bolster their position, it cannot be said that the improper remarks did not deprive defendant of a fair trial.

While we are mindful of the admonition that "[r]eversal is an ill-suited remedy for prosecutorial misconduct" *(United States v Modica,* 663 F2d 1173, 1184, *cert denied* 456 US 989), we are equally mindful of the role of the prosecutor in the criminal justice system: "He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one" *(Berger v United States,* 295 US 78, 88). Considering the severity and frequency of the misconduct, the failure of the trial court to take appropriate action to dilute the effect of that misconduct, and the lack of overwhelming evidence against defendant, we cannot conclude that the same result "would undoubtedly have been reached" without the misconduct *(People v Mott, supra,* at 419; *see, Berger v United States, supra,* at 89). Coupled with the unduly prejudicial effect of Cottrell's impeachment by his prior inconsistent statement *(see,* CPL 60.35 [3]), defendant was deprived of a fair trial.

In light of our ruling, we do not reach the other issues raised by defendant. (Appeal from Judgment of Supreme Court, Erie County, Kubiniec, J.—Criminal Possession Controlled Substance, 4th Degree.) Present—Denman, P. J., Balio, Lawton, Fallon and Davis, JJ.