[920 NE2d 939, 892 NYS2d 832]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v PHILLIP RIBACK, Appellant.

Argued October 22, 2009; decided December 1, 2009

418

## POINTS OF COUNSEL

*Stillman, Friedman & Shechtman, P.C.,* New York City (*Paul Shechtman* of counsel), for appellant. I. The trial court erred in allowing a prosecution expert to testify to the meaning of "pedophilia," "ephebophilia" and "sexual fetish." (*People v Taylor,* 75 NY2d 277; *People v Molineux,* 168 NY 264; *People v Zackowitz,* 254 NY 192; *Gersten v Senkowski,* 299 F Supp 2d 84; *United States v Anderson,* 851 F2d 384.) II. The prosecutor's summation deprived Dr. Riback of a fair trial. (*People v Calabria,* 94 NY2d 519; *People v Zimmer,* 51 NY2d 390; *People v Damon,* 24 NY2d 256; *People v Barber,* 13 AD3d 898; *People v Carney,* 222 AD2d 1006; *People v Mezon,* 80 NY2d 155; *People v Nazario,* 168 AD2d 643; *Kellogg v Skon,* 176 F3d 447; *People v Resek,* 3 NY3d 385; *People v Mendez,* 22 AD3d 688.)

*P. David Soares, District Attorney,* Albany (*Brett M. Knowles* of counsel), for respondent. I. The trial court did not err in allowing a prosecution expert to define "pedophilia," "ephebophilia" and "sexual fetish." (*Matter of Garner v New York State Dept. of Correctional Servs.,* 10 NY3d 358; *Matter of Attorney Gen. of State of N.Y. v Firetog,* 94 NY2d 477; *People v Clarke,* 81 NY2d 777; *People v Liccione,* 50 NY2d 850; *People v McDowell,* 47 NY2d 858; *People v Ross,* 21 NY2d 258; *People v Tevaha,* 84 NY2d 879; *Matter of Gonzalez v State Liq. Auth.,* 30 NY2d 108; *People v Vidal,* 26 NY2d 249; *Wightman v Campbell,* 217 NY 479.) II. Reversal is not warranted because of alleged prosecutorial misconduct. (*People v De Vito,* 21 AD3d 696; *People v Tarantola,* 178 AD2d 768, 79 NY2d 954; *People v Ashwal,* 39 NY2d 105; *People v Hardy,* 34 AD2d 843; *People v Patterson,* 88 AD2d 694, 59 NY2d 794; *People v Marks,* 6 NY2d 67; *People*

*v McMillan,* 66 AD2d 830; *People v Demming,* 116 AD2d 886, 67 NY2d 941; *People v Konigsberg,* 137 AD2d 142, 72 NY2d 912; *People v Broady,* 5 NY2d 500.)

## OPINION OF THE COURT

READ, J.

In late 2002, defendant Phillip Riback, a pediatric neurologist, was charged with criminal conduct involving sexual contact with 14 young male patients whom he treated between 1997 and 2002. There was extensive media coverage of defendant's arrest and the charges he faced. At a lengthy trial in June 2004, the prosecution presented testimony from the 14 boys and their parents; the two police investigators who interviewed these children; a medical conduct investigator for the New York State Department of Health; a pediatric neurologist; and Dr. Richard Hamill, a psychologist who oversees one of the State's largest sex offender treatment programs. The defense called personnel from defendant's medical practice—the administrator, nursing supervisor, medical secretary, and defendant's secretary; and the parents of four other boys whom defendant had treated. Defendant did not testify. The defense theory, pursued through cross-examination of the People's witnesses and in defendant's direct case, was that any unusual behavior that defendant displayed toward his patients was designed to create rapport and put them at ease; and that the most damning accusations made against him were the distorted or mistaken product of suggestive and coercive questioning by parents and police.

The jury convicted defendant of 12 felonies and 16 misdemeanors, and County Court imposed a determinate sentence of 48 years of imprisonment and five years of postrelease supervision. Defendant then moved pursuant to Criminal Procedure Law § 440.10 to vacate the judgment of conviction and sentence based upon evidence turned up during discovery in follow-on civil litigation and his posttrial diagnosis with Asperger's syndrome. County Court issued an order denying the motion, and the Appellate Division granted defendant permission to appeal the order, which was consolidated with his direct appeal. The Appellate Division subsequently affirmed both the judgment and the order, with one Justice dissenting as to the judgment (57 AD3d 1209 [2008]). The court exercised its interest-of-justice jurisdiction to reduce defendant's sentence to 20 years, and the dissenting Justice granted defendant leave to appeal to us. We now reverse.

■ Defendant advances two arguments: that the trial court erred by allowing Dr. Hamill to testify about the meaning of the terms "pedophilia," "ephebophilia," and "sexual fetish"; and that the prosecutor's summation deprived defendant of a fair trial. In addition to disputing both propositions on the merits, the People contend that defendant abandoned his argument about the admissibility of Dr. Hamill's testimony when he did not press it in the Appellate Division, and, in any event, that defendant did not preserve this claim for appellate review by making a specific objection at trial (*see* CPL 470.05 [2]).

We may resolve "any question of law involving alleged error . . . in the criminal court proceedings . . . *regardless* of whether such question was raised . . . upon the appeal to the intermediate appellate court" (CPL 470.35 [1] [emphasis added]; *see People v Colon*, 71 NY2d 410, 413 n 1 [1988]). For purposes of determining whether we may reach the alleged trial error in this case, the only relevant consideration is whether the specific issue was presented to the trial court for decision.

■ Here, defense counsel did not object when the prosecutor asked Dr. Hamill to define the term "ephebophilia." As a result, defendant's argument to us—that the trial judge erred when he allowed this testimony because it was not helpful to the jury and was potentially very prejudicial—is not preserved for our review. Defendant did, however, preserve this argument with respect to Dr. Hamill's testimony on the meaning of "sexual fetish" and "pedophilia." This is apparent from the judge's on-the-record explanation—after untranscribed conferences with the attorneys to hash out the scope of Dr. Hamill's testimony—of why he decided to allow the People to "inquire into the area of sexual fetish," which was followed by a discussion regarding the permissible extent of Dr. Hamill's testimony about "pedophilia." Defense counsel objected after the explanation, and again after the discussion. Although these objections were general in nature, the judge's rulings only make sense as a response to arguments that Dr. Hamill's testimony about "sexual fetish" and "pedophilia" would not be helpful to the jury and was potentially very prejudicial.

■ ■ As to the merits, we conclude that the trial judge did not err when he allowed Dr. Hamill to explain what the term "sexual fetish" means and to give some examples, none of which described any specific behavior that defendant was alleged to have exhibited. This testimony, which County Court took obvious care to circumscribe, was beyond the ken of the average

juror and was arguably useful to these jurors in their evaluation of the evidence. We conclude, however, that the trial judge should not have allowed Dr. Hamill to define "pedophilia" and the "central characteristics" of a "pedophile." Unfortunately, it is difficult to imagine that this information was unknown to the jurors. Whether this error alone would cause us to reverse the judgment in this case is beside the point, though, because this testimony became a springboard for the prosecutor to venture well beyond the evidence and the bounds of fair comment during his summation.

The prosecutor told the jurors that they "heard the definition of a pedophile, didn't you? Did you hear the definition of a pedophile from Dr. Richard Hamill? [Defendant] can't stop." A little later he again linked defendant and the word "pedophile," reminding the jurors that they "heard the definition of pedophile. He's having sex with boys in his office. He's not concentrating on medicine. He's not concentrating on medical questions. He's concerned with gratifying his own sexual desire."

Over objection and for a limited purpose, the trial judge allowed one of the police investigators to tell the jury that she interviewed 49 boys whom defendant had treated. In summation, the prosecutor parlayed this information into the following:

> "[PROSECUTOR]: [The police investigator] told you that 49 interviews had taken place, and she said some of the—they're only charges because she talked to the parents, and the parents didn't want to put their children through this. You got 15 sets of parents out here right now who are probably thinking the same thing after they heard what's going on this week."

> "[DEFENSE COUNSEL]: Objection, Your Honor.

> "THE COURT: Sustained, stricken. Disregard that, ladies and gentlemen.

> "[PROSECUTOR]: Do you blame those parents?

> "[DEFENSE COUNSEL]: Objection, objection.

> "[PROSECUTOR]: Who doesn't want [not] to put their children through this?

> "[DEFENSE COUNSEL]: Objection, objection.

"THE COURT: Sustained, sustained. Move on."

This passage suggested to the jurors that defendant had sexually abused dozens of victims, and that these crimes had not been charged only because many parents were understandably unwilling to subject their children to the rigors of a trial. No evidence supported this suggestion, which was irrelevant to the charges against defendant even if true.

Further, one of the 14 boys recalled nothing except that defendant tickled him during examinations that took place roughly three years before the trial. When offered a copy of his grand jury testimony, this witness said the minutes would not refresh his recollection; that he couldn't "really remember anything about" any of his visits to defendant's office; and that "[i]t's just foggy." Although the charges related to this boy were subsequently dismissed, the prosecutor placed an incriminating gloss on his appearance on the witness stand:

> "I picked up a copy of [the boy's] Grand Jury testimony, which says what he told the police happened to him with [defendant], and I said, I'll give you a copy of this piece of paper with the words on it from the Grand Jury; will that help you remember what's going on[?] [The boy] says, no. [The boy] didn't want to remember, doesn't want to remember. He wants it to go away . . .

> "Does that give you an idea of how difficult it is to walk into a courtroom when you're fourteen or twelve or ten, place your hand on the Bible . . . in front of fifteen strangers, and talk about what happened to you at the hands of that man? That is a little hint about what it's like."

Thus, the prosecutor invited the jury to conclude that the boy's grand jury testimony recounted sexual abuse and that his lapse of memory showed how hard it was for children to acknowledge or disclose what defendant had done to them.

The prosecutor also advised the jury that the case was not "complex" even though there were "a lot of kids" because

"[a]ll you have to do is believe one kid. You believe one child, and it's over, because this huge grand conspiracy . . . , it's a house of cards . . .

"If you believe one child, you can believe all."

These comments potentially diverted the jurors from their obligation to consider defendant's guilt or innocence as to each

crime charged with respect to each child. And although it was the prosecutor who persuaded County Court to sharply limit the number of parents of former patients testifying on defendant's behalf, he remarked to the jury "Congratulations. They found four patients he didn't molest." Finally, the prosecutor observed, "[g]et enough lawyers involved and jury consultants to make sure they pick the perfect jury." This intimated that defendant was exploiting his wealth to engineer a sympathetic jury, and that the jurors should not let him get away with it.

■ As the dissenting Justice in the Appellate Division put it, these numerous "summation misstatements of fact and law . . . when combined with the opinion by the prosecutor that defendant's acts were those of a pedophile . . . rose to such a level that defendant was deprived of the fair trial to which he was entitled" (*People v Riback*, 57 AD3d 1209, 1220 [3d Dept 2008, Malone, J., dissenting]). We recognize that County Court repeatedly sustained defense counsel's objections during the prosecutor's summation, and instructed the jury to disregard parts of it. After a certain point, though, the cumulative effect of a prosecutor's improper comments during summation may overwhelm a defendant's right to a fair trial (*see People v Calabria*, 94 NY2d 519, 523 [2000]). Given the inflammatory nature of the charges in this case, there was a reasonable possibility that this prosecutorial misconduct contributed to the verdict.

Accordingly, the order of the Appellate Division should be reversed, and a new trial ordered.

Chief Judge LIPPMAN and Judges CIPARICK, GRAFFEO, SMITH, PIGOTT and JONES concur.

Order reversed, etc.