■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LAZARO CASANOVA, Also Known as CUBA, Appellant. [988 NYS2d 713]—

Garry, J. Appeal from a judgment of the Supreme Court (Lamont, J.), rendered November 30, 2012 in Albany County, upon a verdict convicting defendant of the crimes of criminal

sale of a controlled substance in the third degree (two counts) and criminal possession of a controlled substance in the third degree.

In February 2012, defendant allegedly sold heroin to a male confidential informant (hereinafter CI) during a controlled buy overseen by police officers in the City of Albany. During two similar controlled buys conducted in March 2012, defendant also allegedly sold heroin to another CI, a female. Shortly thereafter, defendant was arrested, and officers found heroin hidden in his jacket. Defendant was charged by three indictments— subsequently joined for trial—with three counts of criminal sale of a controlled substance in the third degree and one count each of criminal possession of a controlled substance in the third degree and criminal possession of a controlled substance in the seventh degree. Following a jury trial, he was found guilty of two counts of criminal sale of a controlled substance in the third degree and one count of criminal possession of a controlled substance in the third degree.* He was sentenced as a second felony drug offender to an aggregate prison term of seven years, followed by three years of postrelease supervision. Defendant appeals.

The principal question on this appeal is whether various remarks made by the prosecutor during summation were so prejudicial in their cumulative effect that they operated to deny defendant his fundamental right to a fair trial. We are persuaded that they were and, although not all of defendant's challenges to the prosecutor's statements were preserved by appropriate objections, we exercise our interest of justice jurisdiction to take corrective action (see CPL 470.15 [6] [a]; *People v Forbes*, 111 AD3d 1154, 1160 n 6 [2013]; *People v Russell*, 307 AD2d 385, 387 [2003]; *People v Skinner*, 298 AD2d 625, 626 [2002]).

Counsel is afforded wide latitude in advocating for his or her case during summation, but "[t]here are certain well-defined limits" that may not be exceeded (*People v Ashwal*, 39 NY2d 105, 109 [1976]). Here, the prosecutor strayed beyond those parameters by, among other things, repeatedly making remarks that impermissibly shifted the burden of proof from the People to defendant (see *People v Forbes*, 111 AD3d at 1159; *People v Diotte*, 63 AD3d 1281, 1282-1283 [2009]; *People v Allen*, 13 AD3d

---

* Defendant was acquitted of one count of criminal sale of a controlled substance in the third degree. The jury did not determine whether he was guilty of criminal possession of a controlled substance in the seventh degree because that charge was submitted as a lesser-included offense of criminal possession of a controlled substance in the third degree (see CPL 300.40 [3] [b]).

892, 898 [2004], *lv denied* 4 NY3d 883 [2005]). He described defense counsel's summation as "throwing mud," which he characterized as something done by people who "don't have a reasonable excuse as to crimes that they've committed"—thus not only denigrating the theory of defense, but suggesting that it was defendant's affirmative burden to present such an excuse. He then averred that nothing in the trial record established that defendant had not committed the alleged acts. At this point, Supreme Court intervened sua sponte, admonishing the prosecutor that he was improperly shifting the burden of proof and that defendant had no obligation to present evidence proving his innocence. Undeterred, the prosecutor went on to suggest that defendant had been unable to establish that the male CI had a motive to lie, thereby improperly suggesting to the jury that defendant had an obligation to do so (*see People v Levandowski*, 8 AD3d 898, 900-901 [2004]). He stated that, in order to find defendant not guilty, jurors would have to believe that police officers were engaged in a scheme whereby they staged audio recordings of the controlled buys and planted evidence on defendant to frame him, referencing a comedy skit in which police purportedly got away with mistreating people "by sprinkling drugs on them." Defense counsel objected that these comments were improper because, although he had argued that the police work was "sloppy," he had made no claims of police conspiracies, dishonesty or other intentional misconduct, and we agree (*see People v Forbes*, 111 AD3d at 1159). Further, as the court warned the prosecutor, the remarks improperly shifted the burden of proof and—by advising the jury that it would have to believe that police misconduct had occurred in order to acquit defendant—improperly suggested that more than a reasonable doubt was required. Nevertheless, the prosecutor's very next statement again mischaracterized the burden of proof, advising the jury that to have a reasonable doubt, it would "have to doubt the reasonableness of everything that [it] heard during the course of this trial."

The prosecutor also repeatedly and improperly expressed his personal opinion in an effort to vouch for the credibility of witnesses (*see People v Bailey*, 58 NY2d 272, 277 [1983]; *People v Wlasiuk*, 32 AD3d 674, 681 [2006], *lv dismissed* 7 NY3d 871 [2006]; *People v Brown*, 26 AD3d 392, 393 [2006]). When discussing a forensic chemist's testimony that the substances allegedly sold and possessed by defendant were heroin, the prosecutor stated that the issue was "done" and that it was "a closed case." He repeatedly described his witnesses as honest or declared that they had told the truth. He told the jury to take the male CI's word for what had happened during one of the

controlled buys, adding that he "believe[d] that [the male CI] was more than credible." Immediately after Supreme Court admonished the prosecutor that this expression of his personal beliefs was improper, he stated that the male CI was credible and trustworthy because a federal agency, in addition to the local police, was "comfortable" working with him (*see People v Oathout*, 21 NY3d 127, 131 [2013]). Even after the court sustained the objection to this comment and instructed the jury to disregard it, the prosecutor doggedly repeated, "He's worked with both agencies." These errors were compounded by other improprieties, such as the prosecutor's disparaging statement that, if the CIs were as "filthy and disgusting and grimy" as the defense suggested—although, as Supreme Court later noted, defendant had not characterized the CIs that way—"then what are you supposed to think of the person who has made it his job to keep them addicted to these drugs, the person that's supplying them?"

We are mindful that "[s]ummations rarely are perfect . . . [and] not every improper comment made by the prosecuting attorney during the course of closing arguments warrants reversal" (*People v Forbes*, 111 AD3d at 1160). In reviewing whether misconduct has deprived a defendant of a fair trial, we consider its severity and frequency, the corrective action taken, if any, and whether the result would likely have been the same in the absence of the conduct (*see People v Story*, 81 AD3d 1168, 1169 [2011]). Here, Supreme Court sustained defense counsel's objections or admonished the prosecutor sua sponte regarding several comments; many other improper remarks passed without objection or admonishment, and few curative instructions were given. Given the persistence and magnitude of misconduct, we cannot say that any resulting prejudice was alleviated (*see People v Calabria*, 94 NY2d 519, 523 [2000]; *People v Russell*, 307 AD2d at 387). The cumulative effect of the multiple improprieties was to cause such substantial prejudice to defendant that he was denied a fair trial. Accordingly, we reverse and remit for a new trial (*see People v Riback*, 13 NY3d 416, 423 [2009]; *People v Ashwal*, 39 NY2d at 110-111; *People v Forbes*, 111 AD3d at 1160; *People v Roundtree*, 190 AD2d 879, 880-881 [1993]; *People v Proper*, 177 AD2d 863, 864 [1991], *lv denied* 79 NY2d 922 [1992]).

All but one of defendant's remaining contentions are rendered academic by our determination that a new trial is warranted; we find it prudent to address that claim. Defendant contends that a *Wade* hearing should have been conducted because the People failed to establish that the male CI's identification of de-

fendant based upon a photo array was merely confirmatory (*see People v Rodriguez*, 79 NY2d 445, 450 [1992]). It is well settled that "[a] *Wade* hearing is not required when the witness is so familiar with the defendant that there is little or no risk that police suggestion could lead to a misidentification" (*People v Carter*, 57 AD3d 1017, 1017-1018 [2008], *lv denied* 12 NY3d 781 [2009] [internal quotation marks and citations omitted]; *see People v Boyer*, 6 NY3d 427, 431-432 [2006]). At a *Rodriguez* hearing, the People bear the burden of establishing that the witness was sufficiently familiar with defendant (*see People v Rodriguez*, 79 NY2d at 452; *People v Sanchez*, 75 AD3d 911, 912 [2010], *lv denied* 15 NY3d 895 [2010]; *People v Graham*, 283 AD2d 885, 887 [2001], *lv denied* 96 NY2d 940 [2001]). The analysis is narrowly applied and requires proof of factors establishing the prior relationship, such as "the number of times the witness saw the defendant prior to the crime, the duration and nature of those encounters, time periods and setting of the viewings, time between the last viewing and the crime, and whether the two individuals had any conversations" (*People v Coleman*, 306 AD2d 549, 550 [2003]; *see People v Rodriguez*, 79 NY2d at 451).

Upon review, we conclude that the People introduced insufficient information. The sole witness at the *Rodriguez* hearing was a police detective who testified regarding the male CI's description of defendant. While this testimony revealed that the male CI had some familiarity with defendant, it lacked adequate detail to establish that the two were so well acquainted that the male CI was " 'impervious to police suggestion' " (*People v Dixon*, 85 NY2d 218, 224 [1995], quoting *People v Rodriguez*, 79 NY2d at 452; *see People v Coleman*, 306 AD2d at 551; *compare People v Colon*, 307 AD2d 378, 379-380 [2003], *lv denied* 100 NY2d 619 [2003]). Accordingly, upon remittal, a *Wade* hearing must be conducted.

Peters, P.J., Lahtinen, Rose and Devine, JJ., concur. Ordered that the judgment is reversed, on the law and as a matter of discretion in the interest of justice, and matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision.