# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**188**
**KA 10-02154**
PRESENT: PERADOTTO, J.P., CARNI, SCONIERS, AND WHALEN, JJ.

---

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

V                                                MEMORANDUM AND ORDER

DARRELL J. GRIFFIN, DEFENDANT-APPELLANT.

---

TIMOTHY P. DONAHER, PUBLIC DEFENDER, ROCHESTER (JANET C. SOMES OF
COUNSEL), FOR DEFENDANT-APPELLANT.

SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (GEOFFREY KAEUPER OF
COUNSEL), FOR RESPONDENT.

---

Appeal from a judgment of the Monroe County Court (Joan S.
Kohout, A.J.), rendered August 16, 2010. The judgment convicted
defendant, upon a jury verdict, of robbery in the first degree.

It is hereby ORDERED that the judgment so appealed from is
unanimously reversed on the law and as a matter of discretion in the
interest of justice and a new trial is granted.

Memorandum: On appeal from a judgment convicting him upon a jury
verdict of robbery in the first degree (Penal Law § 160.15 [4]),
defendant contends that he was deprived of a fair trial by
prosecutorial misconduct. We agree. Although defendant failed to
preserve his contention for our review with respect to certain alleged
instances of prosecutorial misconduct (*see* CPL 470.05 [2]), we
nevertheless exercise our power to review defendant's contention with
respect to those instances as a matter of discretion in the interest
of justice (*see* CPL 470.15 [6] [a]). We conclude that defendant is
entitled to a new trial.

The prosecutor began her summation by improperly characterizing
the People's case as "the truth" and denigrating the defense as a
diversion (*see People v Miller*, 104 AD3d 1223, 1223-1224, *lv denied* 21
NY3d 1017; *People v Benedetto*, 294 AD2d 958, 959-960; *see also People
v Mehmood*, 112 AD3d 850, 853). In addition, the prosecutor implied
that defendant bore the burden of proving that the complainant had a
motive to lie, thereby impermissibly shifting the burden of proof to
defendant (*see People v Casanova*, 119 AD3d 976, 977-978; *People v
Pagan*, 2 AD3d 879, 880; *Benedetto*, 294 AD2d at 959-960; *People v
Williams*, 112 AD2d 177, 179).

Perhaps most egregiously in this one-witness case where
credibility was paramount, the prosecutor repeatedly and improperly

vouched for the veracity of the complainant (*see People v Moye*, 12 NY3d 743, 744; *People v Walker*, 119 AD3d 1402, 1404; *People v Forbes*, 111 AD3d 1154, 1158). The prosecutor asked the jury "to listen carefully to the 911 call. It may not clearly state what happened, but statements that [the complainant] made like, 'I'm bugging, but I tried to catch him, that's why I left,' are examples of the ring of truth." Defense counsel objected, and the objection was sustained. Nonetheless, the prosecutor continued: "I submit to you the (complainant's statements) are truthful." The prosecutor also bolstered the complainant's credibility by making herself an unsworn witness in the case (*see People v Fisher*, 18 NY3d 964, 966; *Moye*, 12 NY3d at 744; *Forbes*, 111 AD3d at 1158; *People v Spence*, 92 AD3d 905, 905-906). In addressing inconsistencies between the complainant's testimony and his earlier statement to the police, the prosecutor argued that the complainant made only "[o]ne inconsistent statement, from talking to the police *and talking to me*" (emphasis added). The prosecutor's remark suggests that the complainant made numerous prior consistent statements to the police and to the prosecutor herself, and we conclude that such suggestion has no basis in the record (*see Fisher*, 18 NY3d at 966; *People v Ashwal*, 39 NY2d 105, 109-110).

The prosecutor also improperly appealed to the sympathies of the jury by extolling the complainant's "bravery" in calling the police and testifying against defendant (*see People v Smith*, 288 AD2d 496, 497; *People v Andre*, 185 AD2d 276, 278; *see generally People v Ballerstein*, 52 AD3d 1192, 1194). The prosecutor told the jurors that it was "not an easy decision" for complainant to call the police, and asked them to "hang [their] hat on . . . [the complainant]'s bravery by coming in front of you." The prosecutor argued that the neighborhood where the crime occurred and where the complainant's family worked "is an anti-police atmosphere." After defense counsel's objection to that comment was sustained, the prosecutor protested that "it was a statement in evidence" when, in fact, that testimony had been stricken from the record, and County Court had specifically warned the prosecutor not "to go into what this area is like." The prosecutor nonetheless continued her summation by asking the jurors to "[u]se [their] common sense to think about whether or not this happened *and why there's no other witnesses*" (emphasis added). The prosecutor argued that the complainant "is someone who knows the game. He knows the neighborhood, and he knows what would have been the easy thing to do, and I submit to you that easy thing to do was not to call 911 that day." She continued: "So please tell [the complainant] he did the right thing by calling 911 and telling them one man's word is enough. Tell them that he is brave to report this." The prosecutor ended her summation by urging the jury to "tell [the complainant] that his truthfulness is enough to convict the defendant" by returning a guilty verdict.

Although "[r]eversal is an ill-suited remedy for prosecutorial misconduct" (*People v Galloway*, 54 NY2d 396, 401), it is nevertheless mandated when the conduct of the prosecutor "has caused such substantial prejudice to the defendant that he [or she] has been denied due process of law. In measuring whether substantial prejudice has occurred, one must look at the severity and frequency of the

conduct, whether the court took appropriate action to dilute the effect of that conduct, and whether review of the evidence indicates that without the conduct the same result would undoubtedly have been reached" (*People v Mott*, 94 AD2d 415, 419).  Here, misconduct permeated the trial and was at times severe.  In addition to the misconduct on summation, the prosecutor asked improper questions and attempted to elicit irrelevant and inflammatory statements during her direct examination of the People's witnesses (*see generally People v Morrice*, 61 AD3d 1390, 1391).  The prosecutor also called a police witness for the sole purpose of testifying about defendant's arrest, for which she was admonished by the court.  Although the court sustained many of defense counsel's objections, "other improper remarks passed without objection or admonishment, and few curative instructions were given" (*Casanova*, 119 AD3d at 979).  We therefore "cannot say that any resulting prejudice was alleviated" (*id.; see People v Clark*, 195 AD2d 988, 991).  In any event, even where the trial court repeatedly sustains a defendant's objections and instructs the jury to disregard certain remarks by the prosecutor, "[a]fter a certain point, . . . the cumulative effect of a prosecutor's improper comments . . . may overwhelm a defendant's right to a fair trial" (*People v Riback*, 13 NY3d 416, 423).

Finally, inasmuch as the evidence in this case was far from overwhelming, we cannot conclude that "the same result 'would undoubtedly have been reached' without the misconduct" (*Clark*, 195 AD2d at 991; *see Fisher*, 18 NY3d at 966; *People v Cotton*, 242 AD2d 638, 639).

Entered:  February 13, 2015                    Frances E. Cafarell
                                               Clerk of the Court