People v Williams (2019 NY Slip Op 53937)





People v Williams


2019 NY Slip Op 53937


Decided on November 27, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: November 27, 2019

109492

[*1]The People of the State of New York, Respondent,
v
Edmond Williams, Appellant.

Calendar Date: October 8, 2019

Before: Garry, P.J., Egan Jr., Mulvey and Aarons, JJ.


Mitchell S. Kessler, Cohoes, for appellant.
P. David Soares, District Attorney, Albany (Christopher Horn of counsel), for respondent.

P. David Soares, District Attorney, Albany (Christopher Horn of counsel), for respondent.



Garry, P.J.
Appeal from a judgment of the County Court of Albany County (Lynch, J.), rendered May 23, 2017, upon a verdict convicting defendant of the crimes of criminal sale of a controlled substance in the third degree (two counts), criminal possession of a controlled substance in the third degree (two counts) and criminal possession of a controlled substance in the fourth degree.
In a transaction monitored by the City of Albany Police Department, a confidential informant (hereinafter CI) arranged to have defendant deliver certain quantities of crack cocaine and heroin to the CI at a specified location in the City of Albany. Police arrested defendant after he arrived at the location. As the officers approached him, one officer saw defendant throw something away. In a search following defendant's arrest, the officers found crack cocaine on his person, and a search of the vicinity of the arrest disclosed a bag containing heroin under a nearby parked vehicle.
Defendant was charged with criminal sale of a controlled substance in the third degree (two counts), criminal possession of a controlled substance in the third degree (two counts) and criminal possession of a controlled substance in the fourth degree. His first jury trial ended in a mistrial when two sworn jurors became unavailable to continue to serve. During the second jury trial, County Court denied defendant's challenge pursuant to Batson v Kentucky (476 US 79 [1986]) to the People's challenge for cause to a prospective juror. Following the trial, defendant was convicted as charged and sentenced to concurrent prison terms of 12 years, followed by three years of postrelease supervision, on the convictions for criminal sale of a controlled substance in the third degree and criminal possession of a controlled substance in the third degree and to lesser concurrent terms on the remaining offenses. Defendant appeals.
County Court did not err in denying defendant's Batson challenge. Such a claim requires a court to engage in a three-step process to determine whether the People have used a peremptory challenge as a pretext for the exclusion of a potential juror on the basis of race. "At step one, the moving party bears the burden of establishing a prima facie case of discrimination in the exercise of peremptory challenges. Once a prima facie case of discrimination has been established, the burden shifts, at step two, to the nonmoving party to offer a facially neutral explanation for each suspect challenge. At the third step, the burden shifts back to the moving party to prove purposeful discrimination and the trial court must determine whether the proffered reasons are pretextual" (People v Hecker, 15 NY3d 625, 634-635 [2010] [internal quotation marks and citations omitted], cert denied 563 US 947 [2011]; accord People v Kirkley, 172 AD3d 1541, 1544 [2019], lv denied 33 NY3d 1106 [2019]; People v Jones, 136 AD3d 1153, 1157-1158 [2016], lv dismissed 27 NY3d 1000 [2016]).
While defense counsel was questioning the prospective jurors during voir dire, the following exchange took place:
Defense counsel: "You have a question, sir?"
Prospective juror: "Yes, I'm sorry. I don't think it exactly pertains to this, but like I don't know how weird this is to ask, but is that like a guy because I heard Williams. I'm sorry. I just heard Williams like —"
Defense counsel: "This is my client Edmond Williams."
Prospective juror: "Yes, like but what's it for?"
Defense counsel: "Excuse me?"
Prospective juror: "Okay. I'm sorry. I'm very lost. I just recognized and realized that I might know, you know, if this is the actual person that's here today."
Later, the same prospective juror asked defense counsel, "One second. Are you allowed to do that like if you feel like there's certain information that you may need to make a determination, you know, could you ask for it like — "
In a bench conference following these remarks, the prosecutor made a challenge for cause to this prospective juror, stating that "he seem[ed] to be genuinely confused about the [c]ourt process of who the defendant is and his role as a potential juror." Defense counsel then stated that he wished to make a Batson challenge. County Court observed that such an assertion would ordinarily be addressed to a peremptory challenge, but nevertheless conducted the three-step analysis.[FN1] As the prima facie basis for the challenge, defense counsel initially asserted that the prospective juror was African-American and that there was a pattern of exclusion in previous jury selections in defendant's first trial. The court responded, "But we are on this trial," and asked defense counsel to base his claim on the current trial. Counsel then asserted that the prospective juror was the only African-American member of the panel. The court found that this assertion was sufficient to state a prima facie basis and asked the prosecutor for her race-neutral reason for the challenge. The prosecutor reiterated her previous assertion about the prospective juror's confusion. The court stated its own observation that the prospective juror had failed to recognize defendant, although defendant had been introduced and was sitting near the prospective juror, and found that the prosecutor had sufficiently stated a race-neutral reason for the challenge.
County Court thus reached the third step of the Batson analysis, asking defense counsel, "What is your basis for arguing that the reasons given by counsel are merely a pretext for intentional discrimination?" Without mentioning the prior trial, defense counsel argued that it was not unusual for inexperienced prospective jurors to be confused about the legal process and repeated his prior observation that the prospective juror was the only African-American member of the panel. The court then observed that the juror appeared to be "challenged" and "intellectually struggling with the process," found that defendant had not established that the People's stated race-neutral reason was pretextual and denied the Batson challenge. The court further denied the challenge for cause, finding that the juror's confusion was not a sufficient basis for such a challenge. Thereafter, the People used a peremptory challenge to remove the prospective juror.
Defendant now contends that County Court erred in failing to consider the record in defendant's first trial in determining whether the People's facially race-neutral explanation for challenging the prospective juror was a pretext for racial discrimination. In making this claim, defendant relies upon the recent decision of the Supreme Court of the United States in Flowers v Mississippi (588 US ___, ___, 139 S Ct 2228, 2245 [2019]), which held that the prosecution's record of multiple peremptory challenges to African-American prospective jurors in the defendant's prior five trials could be taken into account in determining that one of the prosecution's peremptory challenges in his sixth trial was discriminatory. However, as previously noted, defense counsel referred to the prior trial only at the first step of the Batson analysis and did not mention it as part of his third-stage argument that the People's stated reason was pretextual. When defense counsel sought to raise the issue at the first step of the Batson analysis, County Court made no specific ruling on whether the record of the prior trial could be considered, but merely asked counsel to focus on the current trial and then found — correctly — that defendant was not required to demonstrate a pattern of prior exclusions in order to establish a prima facie case (see People v Smocum, 99 NY2d 418, 421-422 [2003]; People v Jones, 136 AD3d at 1158-1159). The court's request at the third stage of the analysis that defendant state the basis for his claim of pretext was open-ended and did not preclude defendant from mentioning the prior trial again. As defendant nevertheless made no reference to the prior trial, his assertion that the court should have found the People's race-neutral reason to be pretextual based upon the record in the prior trial is unpreserved for appellate review (see People v May, 173 AD3d 1435, 1436 [2019]; People v Thomas, 92 AD3d 1084, 1085-1086 [2012]; see generally People v Childress, 81 NY2d 263, 268 [1993]).[FN2]
In any event, had the issue been preserved, we would have found no error in County Court's denial of the Batson challenge. The court's factual determination that the prospective juror was too confused to serve as a juror was fully supported by the voir dire record and was entitled to "'great deference,'" as it was based upon the court's own observations and assessment of the prosecutor's credibility (People v Kirkley, 172 AD3d at 1545-1546, quoting People v Hecker, 15 NY3d at 656). The record of the prior trial is insufficient to undermine the validity of the court's determination (compare Flowers v Mississippi, 139 S Ct at 2235).[FN3]
Defendant next contends that his convictions are against the weight of the evidence on the ground that, among other things, the testimony of many of the People's witnesses was incredible. The trial testimony revealed that the CI was a minor drug dealer with a record of prior felony and misdemeanor convictions and parole revocations. Earlier on the day of defendant's arrest, the CI had been detained for sales of small quantities of crack cocaine and heroin. In exchange for leniency on these charges, he agreed to cooperate in a "rip" operation to arrest his supplier.[FN4] The CI told the investigating officers that he knew the supplier as "Dutch" or "Magic," described his general physical appearance, and said that he drove a dark-colored Dodge Charger. The CI made a telephone call to this supplier, using a number that he said he had used to reach him on many previous occasions, and arranged to meet the supplier to purchase 10 grams of crack cocaine and 10 bundles, or 100 bags, of heroin. The transaction was to take place at a specified location near the CI's apartment. Police made a recording of this call, which was admitted into evidence and played for the jury.
A "takedown team" of officers then waited in several vehicles in the area. A detective who served as the "surveillance eye" for the operation observed and reported by radio to the rest of the team as defendant arrived, got out of his vehicle — a burgundy or dark-colored Dodge Charger — and appeared to make a telephone call while looking toward the CI's apartment. At that moment, the CI — who was in a nearby police vehicle — received a call from the supplier, stating that he had arrived and asking where the CI was.[FN5] The team then converged upon the scene to arrest defendant. One of the officers saw defendant walking westbound on a nearby street and yelled, "[P]olice, stop." He then saw defendant toss what appeared to be a clear plastic bag toward the street in what he described as "a frisbee-ish throw." He did not see where the bag landed. Officers then apprehended defendant, and the CI identified him as the supplier. A search of defendant's person at the scene revealed a cell phone and a bag containing 10 grams of cocaine. It was later determined that the phone had been used to call the CI's number. A search of the area where defendant had been seen throwing something revealed a plastic bag that contained 100 glassine bags of heroin under a parked vehicle, near the tire on the driver's side.
Defendant argues that the CI's testimony was incredible because of his incentive to lie to avoid prosecution, and that the police officers' testimony is also incredible because of inconsistencies between defendant's two trials and certain errors in the documentation. In defendant's view, the strongest indication that the testimony of the People's witnesses was false is that it would allegedly have been physically impossible for defendant to throw the bag of heroin from the sidewalk to the location under the parked vehicle where it was found. However, this contention presupposes that defendant was beside the vehicle when he threw the bag, and the record gives no indication as to whether that was the case. We note that defendant's counsel made this argument at trial, and the jury apparently did not accept his contention. The other credibility issues, likewise, "were fully explored during cross-examination and were ultimately resolved by the jury in favor of the People" (People v Smith, 174 AD3d 1039, 1042 [2019]; see People v Forbes, 111 AD3d 1154, 1157-1158 [2013]; People v Sheppard, 107 AD3d 1237, 1239 [2013], lv denied 22 NY3d 1203 [2013]). If the jury had discredited the People's proof based on these issues, a different verdict would not have been unreasonable; thus, "[this Court] must, like the trier of fact below, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony" (People v Mateo, 2 NY3d 383, 410 [2004] [internal quotation marks and citations omitted], cert denied 542 US 946 [2004]). According the appropriate deference to the jury's credibility assessments, and viewing the evidence in a neutral light, we find that defendant's convictions are supported by the weight of the evidence (see People v Morris, 165 AD3d 1489, 1490 [2018], lv denied 32 NY3d 1207 [2019]; People v Peterkin, 159 AD3d 1196, 1197-1198 [2018], lv denied 31 NY3d 1151 [2018]; People v Holliman, 12 AD3d 773, 774-775 [2004], lv denied 4 NY3d 764 [2005]).
Egan Jr., Mulvey and Aarons, JJ., concur.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: The People did not object at trial to the timing of defendant's Batson challenge and do not raise any related claims upon this appeal.

Footnote 2: Defendant's related assertion that the prosecutor showed racial bias by mischaracterizing the prospective juror's responses is likewise unpreserved. At trial, defense counsel agreed with County Court and the prosecutor that the prospective juror did not appear to understand the legal process and did not recognize defendant, arguing only that such confusion was not unusual and that a different prospective juror — who had been excused — had also failed to recognize defendant.

Footnote 3: In the prior trial, County Court denied defense counsel's Batson challenges to the People's use of peremptory challenges to exclude four African-American prospective jurors after finding that the People's stated reasons for the challenges were not pretextual. Defendant argued that these were the only African-American individuals on the panel, while the prosecutor argued that another juror who was seated on the jury appeared to be "potentially" of African-American descent.

Footnote 4: A detective testified that, in a rip operation, police have a CI arrange for a drug transaction with a targeted suspect and then arrest the suspect at the outset of the transaction, before any drugs or money change hands.

Footnote 5: This call was not recorded because of a technical problem.